STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
THOMAS TRANTINO, DEFENDANT-APPELLANT.

Argued February 3 and April 21, 1969—Decided February 8, 1972.

*Mr. Leonard I. Weinglass* argued the cause for defendant-appellant.

*Mr. Harold N. Springstead,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney; *Mr. Springstead,* on the brief).

PER CURIAM. This is an appeal from a denial of post-conviction relief following defendant's conviction for first degree murder in 1964. It came to this court as of right because the death penalty was imposed by the jury. *R. R.* 1:2–1(c).

The conviction was affirmed in 44 *N. J.* 358 (1965). A motion for a new trial was denied by the trial judge and that action was affirmed in 45 *N. J.* 37 (1965). The United States Supreme Court denied certiorari, 382 *U. S.* 993, 86 S. Ct. 573, 15 *L. Ed. 2d* 479 (1966), and a petition for re-hearing thereof, 383 *U. S.* 922, 86 S. Ct. 901, 15 *L. Ed. 2d* 679 (1966). A subsequent application to the United States District Court for federal *habeas corpus* was dismissed for failure to exhaust state remedies, and the present application followed. The matter was heard by the judge who presided at the original trial. Defendant was represented by counsel of his own choosing, a lawyer who was not his trial attorney. Extensive testimony was presented and the judge made full findings of fact and conclusions of law.

Argument on this appeal was had a considerable time ago. Decision was withheld because there were then pending in the United States Supreme Court cases attacking the validity of the death penalty under the New Jersey murder statute, as a result of our decision in *State v. Forcella,* 52 *N. J.* 263 (1968). That matter was not resolved until the memorandum reversal as to the death penalty and remand by that court in *Funicello v. New Jersey,* 403 *U. S.* 948, 91 S. Ct. 2278, 29 *L. Ed. 2d* 859 (June 28, 1971), and our decision on the remand in *State v. Funicello,* 60 *N. J.* 60 (January 17, 1972). The result is that the death penalty is unconstitutional under our homicide statute. Trantino was a party to the remand proceedings before us in *Funicello* and his death sentence was set aside, and he was "sentenced to life imprisonment, *nunc pro tunc,* as of the date the death sentence was initially imposed, the defendant to be entitled to the same credits as if initially sentenced to life imprisonment." *State v. Funicello, supra,* p. 68.

Trantino's counsel indicated in effect during the argument on the *Funicello* remand that, even if we should decide as we ultimately did as to the death penalty, he still desired to press the post-conviction relief claims. One of those claims was that the jury had not been selected in accordance with *Witherspoon v. Illinois*, 391 *U. S.* 510, 88 S. Ct. 1770, 20 *L. Ed. 2d* 776 (1968) (decided after the trial in the instant case). As we pointed out in *Funicello* (60 *N. J.* p. 67), that issue falls away with the invalidity of the death penalty.[1]

We have carefully considered all of defendant's other points and find that none of them warrant post-conviction relief. Little discussion is required. The context of the murder trial and the present application should first be briefly outlined. Defendant and one Falco committed a robbery in Brooklyn. Thereafter they repaired, with several companions, to a tavern in Lodi, New Jersey. Two local police officers came to the tavern to investigate a report that some shots had been fired inside the place. In the course of their investigation, they demanded proof of identification of the patrons and discovered a revolver concealed in the premises. The officers were then ruthlessly shot and killed. More detail will be found in our first opinion, 44 *N. J.* at 361–363. The state's evidence, through testimony of eyewitnesses, as well as of admissions subsequently made by defendant, demonstrated that defendant fired the fatal shots and apparently did so in an attempt to prevent the arrest of Falco, who was

---

[1]At the oral argument on the *Funicello* remand, Trantino's counsel suggested the additional post-conviction relief point that a jury selected with regard to scruples upon capital punishment is conviction-prone, and so he should have a new trial as to guilt on that account. Apart from the fact that the point was not raised below or in the 1969 arguments before us, we rejected the same contention in *State v. Forcella, supra,* 52 *N. J.* at 285–286, following the view expressed by the United States Supreme Court in *Witherspoon,* 391 *U. S.* at 516–518, 88 S. Ct. 1770, 20 *L. Ed. 2d* at 782, and see no reason to reconsider.

wanted for murder in New York. The two fled to New York City. Falco was later killed by police there in resisting arrest; defendant surrendered after that event.

The state's theory was premeditated murder. Defendant's testimony was that he had no recollection of the slayings, beyond recalling a loud explosion and a confusion of wild sound and light. He sought to attribute this lack of recollection to prior consumption of a considerable quantity of liquor and two dexedrine pills. It is a fair characterization of the defense, which was presented by an able and experienced lawyer, to say that it was penalty oriented — to avoid the death penalty, either by a jury recommendation of life imprisonment or by a conviction for second degree murder on the thesis that his physical and mental condition was such that the necessary first degree elements of premeditation, deliberation and wilfulness was not present.

█ The scope of our post-conviction relief proceeding is governed by present *R.* 3:22–2, –3, –4 and –5 (formerly *R.R.* 3:10A–2, –3, –4 and –5, in effect at the time of this application) and is subject to two fundamental principles, aptly summarized in *State v. (Edgar) Smith,* 43 *N. J.* 67, 74 (1964), *cert.* denied 379 *U. S.* 1005, 85 S. Ct. 731, 13 *L. Ed. 2d* 706 (1965), rehearing denied 380 *U. S.* 938, 85 S. Ct. 945, 13 *L. Ed. 2d* 826 (1965):

. . . One principle is that a post-conviction proceeding may not be used as a substitute for an appeal from the judgment of conviction. All alleged errors inhering in a trial must be asserted in a direct review from the conviction, the sole exception being an error which denies fundamental fairness in a constitutional sense and hence denies due process of law. The second principle is that an issue, even of such constitutional dimensions, once decided, may not be relitigated. . . .

It may be added that denial of fundamental fairness in a constitutional sense, so as to warrant consideration in such a proceeding, is not established by the mere characterization of a claim of trial error or other wrong in such terms.

Especially to be kept in mind is that the grounds for post-conviction relief were asserted in the context that the murder trial was essentially an issue of life versus death and that the death penalty had been imposed. Defendant's brief, both expressly and inferentially, stresses the death penalty outcome as giving his claims greater strength than would otherwise be the case. The judge viewed them in this same atmosphere, stating that he considered them fully for that reason, although he conceived they were not the true subject of a post-conviction application. That death penalty context is now, of course, completely dissipated by the vacation of that sentence.

Defendant's first claim is that he was denied his right to counsel because the prosecutorial authorities deprived his counsel of the opportunity to interview the eyewitnesses before trial. The claim was not factually established at the post-conviction hearing. Counsel did take the deposition of one such witness in the presence of an assistant prosecutor; others said they did not wish to talk to him or his representative. More important, no complaint or application with respect thereto was made to the trial court and on appeal it was only urged that counsel was not furnished copies of the statements of these witnesses before trial. Clearly the now asserted claim of error, even if it had a sound basis, had to be made on direct review of the conviction and cannot serve as a ground for post-conviction relief.

Defendant next contends that he was denied due process because he was incapable of properly defending himself, particularly on the day he testified, by reason of dullness of his mental faculties due to the ingestion of tranquilizing medication. As developed at oral argument, he is actually urging that he was unable to recall when he was on the witness stand what took place on the occasion of the slayings because of the medication, whereas now he does recall that Falco, and not he, did the shooting, and he desires a new trial to project this different defense theory.

By reason of acute tension while in jail awaiting trial, physicians had prescribed both mild and more potent tranquilizers. Extensive expert testimony on their effect was produced at the post-conviction hearing. The judge found that defendant had not taken the more potent drug on the day he testified and that there was nothing about the milder one which would affect his ability to conduct his defense or testify. He further noted that on the day defendant testified he was not drowsy or lethargic, but sharp and in the same condition as at the time of his testimony in the post-conviction hearing. Again, no claim was made to the trial judge at the time that defendant was not mentally or physically fit to testify. The claim is devoid of merit.

Defendant further argues that he was denied due process by reason of a claimed erroneous instruction to the jury on the matter of intoxication, which deprived him of his principal defense to the charge of first degree murder. The claim is one of mere trial error which was not urged on appeal from the conviction (other claims of error in the charge were asserted on that appeal and found to be without merit, 44 *N. J.* at 371). Defendant submits no authority to support his bald statement that such an alleged error is of constitutional dimension permitting post-conviction relief. The claim certainly is beyond the proper scope of a post-conviction proceeding. In any event, we fail to see any prejudicial error in the charge in this respect. Moreover, the evidence seeking to show that defendant, by reason of intoxication, did not premeditate, deliberate and wilfully carry out the killings, was so insubstantial and all of the proofs leaned so overwhelmingly the other way that there would have been no harm if the trial judge had not charged on the subject at all.

The remaining grounds for post-conviction relief set forth in defendant's petition are so unmeritorious as not to require specific mention.

The order denying post-conviction relief is affirmed.

FRANCIS, J. (concurring in part and dissenting). I agree with the portion of the opinion which finds no merit in any of the grounds raised on the application for post conviction relief from the finding by the jury that Trantino was guilty of first degree murder.

However, with respect to the action of the majority · in reaffirming the vacation of the death sentence imposed on Trantino as the result of the jury's refusal to recommend life imprisonment, I repeat the dissent voiced in *State v. Funicello*, 60 *N. J.* 84 (1972).

The majority of the Court vacated the death sentences in *Funicello* and in the other cases referred to in the *per curiam* opinion because they believed that the summary reversal by the United States Supreme Court of the death sentence in *Funicello v. New Jersey*, 403 *U. S.* 948, 91 *S. Ct.* 2278, 29 *L. Ed. 2d* 859, motion for rehearing and clarification denied 404 *U. S.* 876, 92 S. Ct. 31, 30 *L. Ed. 2d* 125 (1971), meant that the death penalty provision in the New Jersey homicide act is unconstitutional. That summary reversal in *Funicello* simply cited *United States v. Jackson*, 390 *U. S.* 570, 88 S. Ct. 1209, 20 *L. Ed. 2d* 138 (1968) as the basis for its action. No effort was made to explain why the opinion of our Court in *State v. Forcella*, 52 *N. J.* 263 (1968), *cert.* dismissed 397 *U. S.* 959, 90 S. Ct. 999, 25 *L. Ed. 2d* 252 (1970), distinguishing the Federal Kidnaping Act involved in *Jackson* from the New Jersey homicide statute was not sound. I believed when *Forcella* was written, and I still hold the view that our statute is valid constitutionally.

Without reciting again the reasons for my earlier dissent, it seems sufficient to say in this case that Trantino was not subjected either to encouragement or coercion to plead *non vult* to the indictment against him. Nor did he go to trial because he was "ingenuous" enough to claim innocence and to seek an acquittal by demanding a jury trial. See *United States v. Jackson*, 390 *U. S.* at 573, 581, 583, 88 S. Ct. at 1211, 1216, 1217, 20 *L. Ed. 2d* 138, at 147, 148. He went to trial because the State considered the murders involved

to be so horrendous that plea bargaining was not justified, and that the public interest in deterrence of such murders required a jury trial and a demand for the death penalty. So the trial was held and the jury being unable to find any mitigating circumstances declined to recommend life imprisonment.

No one suggested that the jury action was unreasonable. As the opinions in this case indicate two young police officers were forced at gunpoint to undress, and when partially unclothed were "ruthlessly shot and killed." *State v. Trantino*, 44 *N. J.* 358, 362–363 (1965) ; *Id.* at page 179 of 60 *N. J.* And as the majority opinion herein notes, "It is a fair characterization of the defense, which was presented by an able and experienced lawyer, to say that it was penalty oriented — to avoid the death penalty * * *."

The momentous significance of the United States Supreme Court's *one paragraph* reversal of the death penalty in *Funicello* should not escape full awareness. It means that since 1917 at least, the date of the last material amendment of the homicide act, every convicted murderer who received a death sentence following a jury trial was put to death unconstitutionally. According to the records of the Department of Institutions and Agencies 113 men, perhaps the most notorious of whom was Bruno Richard Hauptmann, have been executed in New Jersey since 1917. That is hardly a comforting thought for present and former trial judges who were obliged to impose death sentences during that period because conscientious juries, regardless of their personal feelings about capital punishment, agreed with the prosecutors that service of the public safety and interest under existing law required the death penalty in each of those cases.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL and SCHETTINO—5.

*Concurring in part and dissenting in part* — Justice FRANCIS—1.