601 A.2d 198
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DARRELL MITCHELL, DEFENDANT-RESPONDENT.

Argued October 9, 1991—Decided January 28, 1992.

568

*Mark E. Bailey,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Cherrie Madden Black,* Deputy Attorney General, of counsel and on the brief).

*Theresa Y. Kyles,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney; *Ruthann Russo,* Designated Counsel, of counsel and on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns whether the petition for post-conviction relief brought by defendant, Darrell Mitchell, is barred by *Rules* 3:22–12 and 3:22–4. Six-and-a-half years after he had been sentenced on his guilty plea to felony-murder, Mitchell petitioned for post-conviction relief. His petition was thus filed well beyond the five-year deadline established by *Rule* 3:22–12. Moreover, in contravention of the bar imposed under *Rule* 3:22–4, defendant based his petition on a ground that he could have raised but did not on direct appeal. This opinion underscores the importance of the foregoing Rules and emphasizes that this case does not present the type of exceptional circumstances that would justify their relaxation.

I

On November 3, 1981, defendant and James Ryles were involved in the robbery and beating of John Brennan, an eighty-year-old man. A month later, on December 4, 1981, the victim died of pneumonia, which had arisen as a complication of the beating.

Both Mitchell and Ryles were indicted for first-degree robbery and felony-murder. Their accounts of the events differed significantly. Mitchell claimed that he was simply a lookout for

Ryles and did not participate in the beating; Ryles claimed that Mitchell was primarily responsible.

On June 4, 1982, Mitchell pleaded guilty to felony-murder. In exchange, the State agreed to dismiss the indictment for first-degree robbery and to recommend a maximum sentence of thirty years of imprisonment with a twelve-year period of ineligibility for parole. In response to repeated inquiries concerning his understanding of the charge and the plea agreement, Mitchell consistently expressed his understanding of and agreement to the plea and specifically acknowledged that he was pleading "guilty as a participant in the homicide of the victim * * *." He explained the evening's events in his own words by stating that Ryles had approached him saying "he knew where to make a few dollars," and that he had accompanied Ryles knowing that Ryles intended to rob an elderly gentleman and that defendant was to be the lookout. Mitchell testified that he had observed Ryles beating the man and that he had received five dollars for his participation in the robbery.

The trial court then confirmed Mitchell's understanding of the plea agreement and its implications. Finding that Mitchell's plea was knowing and voluntary and that there was a factual basis, the court accepted the guilty plea. Prior to sentencing Mitchell, the judge presided over his co-defendant's trial.

Mitchell was sentenced on July 15, 1982. During the sentencing hearing, his attorney indicated that defendant had "gone over every page" of the presentence report and had found no errors except for a misspelling of his attorney's name. Of relevance to the plea's factual basis, the report stated that an autopsy attributed the cause of death to pneumonia caused by a "massive subdural hematoma," a brain hemorrhage. Defendant's attorney indicated that Mitchell expected a heavy sentence because he knew "what he did was wrong." Mitchell himself expressed his remorse, stating that he was "very sorry that the incident I was involved in transpired in the taking of

one's life * * *." The court sentenced defendant to the maximum sentence allowable under the plea agreement: thirty years of incarceration with a twelve-year-period of parole ineligibility.

In his direct appeal filed in August 1982, the only claim Mitchell raised was that the sentence imposed was excessive in light of his cooperation with the authorities in testifying against Ryles. Finding that claim "clearly without merit," the Appellate Division affirmed defendant's conviction in an unpublished opinion.

Six-and-a-half years after he had been sentenced, Mitchell filed a *pro se* petition for post-conviction relief. His primary contention was that his alleged role as a lookout was insufficient to establish a factual basis for his guilt for felony-murder. Mitchell also contended that in determining his sentence the court had inappropriately considered evidence beyond that offered by defendant in his plea hearing.

The same judge who had accepted defendant's guilty plea, sentenced him, and presided over his co-defendant's trial heard Mitchell's petition for post-conviction relief. The trial court did not address the procedural grounds for barring Mitchell's petition for post-conviction relief but instead evaluated the merits of his substantive claim and concluded that even assuming that Mitchell had been only a lookout, a sufficient factual basis for defendant's plea had been established. The court did not address Mitchell's contention that he had been improperly sentenced.

Defendant appealed, contending for the first time that the causal link between Brennan's beating and his subsequent death had not been demonstrated with enough certainty to constitute a factual basis for his plea.

The Appellate Division reversed the Law Division's denial of the petition. Noting that Mitchell's co-defendant had been acquitted of felony-murder, the court reasoned that Ryles' acquittal might have been due to inadequate proof of causation

between the beating of the victim and his subsequent death. Recognizing that the causal question would be identical in the two cases, the court believed that Ryles' acquittal indicated that there might not have been a sufficient factual basis to justify the trial court's acceptance of Mitchell's guilty plea.

With a nod in the direction of the procedural Rules, which should have barred Mitchell's petition, the court believed that the potential for injustice might provide sufficient grounds to relax the Rules. To allow the Law Division to explore the "disparate dispositions of the felony murder charges," the Appellate Division remanded the case, instructing the court to evaluate "whether the interests of justice require the court to grant defendant relief from his plea."

The State petitioned for certification, contending that the Appellate Division had erred in improperly relaxing *Rule* 3:22–12 and in relaxing *Rule* 3:22–4 by permitting defendant to raise an issue he could have raised on direct appeal. The State also argued that, on the merits, there was a sufficient factual basis for defendant's plea. We granted certification, 126 *N.J.* 322, 598 *A*.2d 882 (1991).

## II

*Rule* 3:22–12 provides:

A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.

There are good reasons for such a Rule. As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. Those difficulties have not gone unnoticed by our courts. *See, e.g., State v. Dillard,* 208 *N.J.Super.* 722, 727, 506 *A*.2d 848 (App.Div.) ("with the passage of time it

may become more difficult to rule upon the allegations in a petition for post-conviction relief * * *."), *certif. denied,* 105 *N.J.* 527, 523 *A.*2d 169 (1986); *State v. Marshall,* 244 *N.J.Super.* 60, 69, 581 *A.*2d 538 (Law Div.1990) (faced with the potential prospect of evaluating the constitutionality of a twenty-two-year-old conviction, "it would be a practical impossibility * * * to conduct a proper hearing"). Moreover, the Rule serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.

The Rule is not rigid and monolithic. When an illegal sentence is in question, no time limitations apply. When the petitioner demonstrates excusable neglect, a court may disregard the five-year bar. And as with all of our Rules, where the interests of justice so require, the Rule will be relaxed. *Rule* 1:1–2. However, the facts of this case do not present sufficient grounds for lifting the five-year bar; doing so under the present circumstances would render the Rule largely meaningless.

## A

█ *Rule* 3:22–12 allows a court to review a petition filed more than five years from the date of the judgment of conviction if the petition alleges facts demonstrating that the delay was due to the defendant's excusable neglect. *See, e.g., State v. Sloan,* 226 *N.J.Super.* 605, 612, 545 *A.*2d 230 (App.Div.), *certif. denied,* 113 *N.J.* 647, 552 *A.*2d 171 (1988). If the petitioner does not allege sufficient facts, the Rule bars the claim. *See State v. Culley,* 250 *N.J.Super.* 558, 561, 595 *A.*2d 1098 (App.Div.1991); *State v. Jenkins,* 221 *N.J.Super.* 286, 293, 534 *A.*2d 421 (App.Div.1987), *certif. denied,* 113 *N.J.* 343, 550 *A.*2d 456 (1988), *cert. denied,* 488 *U.S.* 1032, 109 *S.Ct.* 843, 102

L.Ed.2d 975 (1989); *Dillard, supra,* 208 *N.J.Super.* at 727–28, 506 *A.2d* 848; *State v. Morales,* 120 *N.J.Super.* 197, 293 *A.2d* 672 (App.Div.), *certif. denied,* 62 *N.J.* 77, 299 *A.2d* 75 (1972). The petition itself must allege the facts relied on to support the claim. *See Morales, supra,* 120 *N.J.Super.* at 200, 293 *A.2d* 672.

 Here, Mitchell did not claim excusable neglect nor allege any facts excusing his delay. The petition is thus time-barred.

## B

Nor does Mitchell's claim constitute a petition to correct an illegal sentence, despite the wording in his petition to the contrary. Neither of the lower courts nor defendant in his brief to this Court discussed this issue.

 We recognize that under some extraordinary circumstances, a court's improper acceptance of a guilty plea may constitute an illegal sentence within the meaning of *Rule* 3:22–12. For a guilty plea to be illegal in that sense, however, its acceptance must implicate constitutional issues—issues not present in this case. *See State v. Paladino,* 203 *N.J.Super.* 537, 549–50, 497 *A.2d* 562 (App.Div.1985); *State v. Owczarski,* 236 *N.J.Super.* 52, 55–56, 563 *A.2d* 1166 (Law Div.1989).

 Our procedural Rules do require a judge to elicit a factual basis for a guilty plea. *R.* 3:9–2. As long as a guilty plea is knowing and voluntary, however, a court's failure to elicit a factual basis for the plea is not necessarily of constitutional dimension and thus does not render illegal a sentence imposed without such a basis. A factual basis is constitutionally required only when there are indicia, such as a contemporaneous claim of innocence, that the defendant does not understand enough about the nature of the law as it applies to the facts of the case to make a truly "voluntary" decision on his own. *See McCarthy v. United States,* 394 *U.S.* 459, 467, 89 *S.Ct.* 1166, 1171, 22 *L.Ed.2d* 418, 425–26 (1969); *State v.*

*Barboza,* 115 *N.J.* 415, 421 & n. 1, 558 *A.*2d 1303 (1989). At Mitchell's plea hearing the court made sure that Mitchell's plea was knowing and voluntary; at no point in the plea proceedings did defendant proclaim his innocence or demonstrate a lack of understanding of the law. His sentence is not an "illegal sentence."

## C

The Appellate Division recognized that defendant's petition was barred under *Rule* 3:22–12. It therefore turned to *Rule* 1:1–2 to justify relaxing the five-year time bar in the interests of justice. In relevant part, *Rule* 1:1–2 states:

> The rules * * * [of the courts] shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court * * * if adherence to it would result in an injustice.

We note at the outset that in exercising discretion, courts must be guided by the polestar of justice and "our procedures must ever be moulded and applied with that in mind." *New Jersey Highway Auth. v. Renner,* 18 *N.J.* 485, 495, 114 *A.*2d 555 (1955). Our Rules are not ends in themselves, they are a means to achieving a functioning and just system. *See, e.g., Viviano v. CBS,* 101 *N.J.* 538, 550–51, 503 *A.*2d 296 (1986) ("The Rules of Practice are not an end unto themselves, but a means of serving the ends of justice."); *Cimiluca v. Cimiluca,* 245 *N.J.Super.* 149, 152, 584 *A.*2d 823 (App.Div.1990) ("Rules of procedure do not exist for their own sake, but as means to an end.").

But rules and proper court procedures serve significant goals. Their importance is well expressed in an often-quoted passage from a 1951 article on New Jersey's rules of procedure:

> It is clear * * * that liberality in procedure has limits. The design and an essential function of rules of practice is to establish a certain order and sequence in the conduct of litigation. [If] [f]lexibility * * * verges upon procedural chaos, [it] is no more desirable than the straight jacket of the

common law writs. [While] [t]he rules will not be allowed to become booby traps * * *[,] they were written and meant to be applied." Morris Schnitzer, *Civil Practice and Procedure*, 5 *Rutgers L.Rev.* 295, 295–96 (1950).]

■ *Rule* 1:1–2 was not intended to vitiate the rules from which it permitted exceptional relief. *See Hodgson v. Applegate*, 31 *N.J.* 29, 37, 155 *A.*2d 97 (1959) ("[i]n promulgating rules of practice, it was not intended to have one rule rendered meaningless by another"); *see also Crews v. Garmoney*, 141 *N.J.Super.* 93, 96, 357 *A.*2d 300 (App.Div.1976) (noting with approval *Schlosser v. Kragen*, 111 *N.J.Super.* 337, 268 *A.*2d 321 (Law.Div.1970), in which the court concluded that given the extent of the violation invoking *Rule* 1:1–2 to relax a time limitation rule would render it meaningless). Although the purpose of *Rule* 1:1–2 is to grant exceptions, we can avoid the gradual disintegration of our rules only by requiring that each such grant be carefully considered. *See Jansson v. Fairleigh Dickinson Univ.*, 198 *N.J.Super.* 190, 196, 486 *A.*2d 920 (App. Div.1985) (in deciding to relax a discovery rule "we [are not] unmindful of the perils and gravitational pull of the slippery slope wherein the efficacy of our rules is destroyed by the gradual cumulation of exceptions").

■■ The difficult task, then, is to determine under what exceptional circumstances applying our Rules could be considered an "injustice." In the first place, for the petitioner to allege simply that an injustice has transpired is not enough. The petitioner must be prepared to "establish, by a preponderance of the credible evidence, that he is entitled to the requested relief." *State v. Marshall*, 244 *N.J.Super.* 60, 69, 581 *A.*2d 538 (Law Div.1990). To sustain that burden, specific facts must be alleged and articulated, which, if believed, would provide the court with an adequate basis on which to rest its decision. A court reviewing a petition that does not allege facts sufficient to sustain that burden of proof should not jump to its own conclusions regarding the factual circumstances of the case.

In the context of post-conviction relief, a court should relax *Rule* 3:22–12's bar only under exceptional circumstances. The court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits. As we have made clear, the longer the time-span since the original trial, the more difficult a retrial becomes. Absent compelling, extenuating circumstances, the burden of justifying a petition filed after the five-year period will increase with the extent of the delay. The prejudice to the State's ability to litigate the case after a long delay is also relevant. If the key witnesses are unlikely to be available, evidence has disappeared, or other obstacles are present, allowing the petition for post-conviction relief will unduly prejudice the State's ability to bring its case. These concerns must, however, be balanced against the significance of the petitioner's interest in raising his or her petition. If the petitioner articulates facts that demonstrate a serious question about his or her guilt or the propriety of the sentence imposed and is prepared to provide factual evidence to support it, then sufficient grounds for relaxing the Rule might exist. In other words, a court should determine that the procedural rule as applied is unjust only when a significant liberty interest is at stake and the petitioner has offered something more than a bare allegation that that is so. Because a bright line rule is impossible, a review of some of the cases in which procedural bars have been relaxed may provide a better sense of what we mean.

In *State v. Marshall,* 244 *N.J.Super.* 60, 581 *A.*2d 538 (Law Div.1990), the Law Division emphasized that substantial constitutional questions will overcome potential procedural bars, such as the five-year rule, to a petition for post-conviction relief. *Id.* at 65 & n. 3, 69, 581 *A.*2d 538. The court indicated it would relax the Rules if the petitioner could demonstrate that he had received an enhanced sentence based on an unconstitutionally-

imposed conviction in another state and was thus being incarcerated for longer than was legally justified.

In *State v. Hale*, 116 *N.J.Super.* 106, 281 *A.*2d 106 (Law Div.1971), the trial court's failure to give the defendant a sanity hearing where the record indicated that the defendant might well have been insane when he committed his crime raised an issue of "fundamental injustice" that justified relaxing the five-year bar. *Id.* at 111, 281 *A.*2d 106. Although the court ultimately concluded that the defendant's due process rights had not been violated and denied the post-conviction relief petition on the merits, *id.* at 119, 281 *A.*2d 106, the significant liberty interest at stake justified waiving the five-year bar. *See also State v. Clark*, 65 *N.J.* 426, 437–38, 323 *A.*2d 470 (1974) (rule preventing "excessive sentence" claims from being raised in a post-conviction relief proceeding relaxed due to egregious circumstances presented, involving imposition of consecutive sentences contrary to fundamental purposes of Sex Offender Act under which petitioner had been convicted).

We are convinced that the circumstances of this case do not present the potential for "injustice" that would justify relaxing the five-year rule. Even assuming, *arguendo,* that the court should have elicited a more expansive factual basis from defendant before accepting his plea, defendant has not alleged or shown that there was insufficient evidence in the record as a whole available to the court to convince it that there was not an adequate factual basis for the plea and that Mitchell was not sentenced for a crime he did not commit.

In determining whether an adequate factual basis exists, the court may consider the defendant's statements as well as information gleaned from the surrounding circumstances. *See State v. Barboza, supra,* 115 *N.J.* at 422, 558 *A.*2d 1303; *State v. Sainz,* 107 *N.J.* 283, 293, 526 *A.*2d 1015 (1987). In evaluating the "surrounding circumstances," the court may consider a wide range of information sources, including all testimony at the plea and sentencing hearings, the

presentence report, as well as other sources unique to a particular case, such as the proceedings of Mitchell's co-defendant's trial, over which the judge had just presided.

■ Defendant's petition does not raise a genuine issue that an injustice was done because he does not and cannot allege that there were insufficient facts known to the court to meet the elements of felony murder. Mitchell's own testimony clearly established his participation in the robbery. At the plea hearing, the causal connection between the beating and the death had seemed so obvious as to be presumed by all the parties. Any doubts about the causal connection were resolved by the time of the sentencing hearing, because the presentence report, read and approved by Mitchell, clearly indicated that the beating had caused a brain hemorrhage which led to the pneumonia causing Brennan's death. Having just presided over Mitchell's co-defendant's trial, the trial judge was well aware of the clear evidence of causation adduced there. Moreover, Mitchell clearly believed himself to be guilty of the crime that resulted in Brennan's death. At sentencing, he expressed his remorse "that the incident I was involved in transpired in the taking of one's life." The evidence before the trial court in reviewing the petition for post-conviction relief thus did not present the exceptional circumstances that would have rendered adherence to the five-year bar an injustice and justified relaxation of the Rule.

Nor is there any merit in the Appellate Division's belief that "injustice" resulted from the acquittal of Mitchell's co-defendant on the felony-murder count. The Appellate Division's concern was misplaced as a matter of law, and was particularly misplaced in light of the facts in this case.

■ As a matter of law, the acquittal of a co-defendant is not an appropriate barometer for whether the factual basis for a plea is adequate. We have no way of knowing what element of the State's case failed, and why the jury chose not to convict Ryles of felony-murder. In a trial the presumption is of

innocence, and the jury must find every element of the crime beyond a reasonable doubt. In a plea bargain setting, in which the defendant is knowingly and voluntarily coming forward to admit his guilt, the court must simply be satisfied that there is a factual basis for the plea. Because both the starting presumptions and the level of proof necessary to overcome them differ, a co-defendant's acquittal does not, *per se*, jeopardize a co-defendant's guilty plea.

In sum, unless a petitioner alleges and demonstrates that he can provide clear evidence that an innocent party has mistakenly pleaded guilty or has received a manifestly improper sentence, the Rule barring petitions for post-conviction relief more than five years after sentencing will not be deemed to create an "injustice" that would justify relaxation of the Rule pursuant to *Rule* 1:1–2. Defendant has not shown that such evidence could be provided in this case.

## III

Mitchell's petition faced another procedural hurdle: it presented grounds that could have been but were not raised in the proceedings below. *Rule* 3:22–4 states in relevant part:

[a]ny ground for relief not raised in a prior proceeding * * * is barred from assertion in a proceeding * * * unless the court * * * finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

The "prior proceeding" in which Mitchell should have raised his claims was his direct appeal. However, his direct appeal, which was denied, challenged only the excessiveness of his sentence in light of his willingness to testify against his co-defendant at some personal risk to himself.

*Rule* 3:22–4 expresses the well-settled principle that "post-conviction proceedings are not a substitute for direct appeal." *State v. Cerbo*, 78 *N.J.* 595, 605, 397 *A.2d* 671 (1979); *State v. Cacamis*, 230 *N.J.Super.* 1, 5, 552 *A.2d* 616 (App.Div.1988),

*certif. denied,* 114 *N.J.* 496, 555 *A.*2d 617 (1989). In *Cerbo,* we noted that a claim that might have been cognizable on direct appeal will not necessarily be considered in a petition for post-conviction relief. *Cerbo, supra,* 78 *N.J.* at 605, 397 *A.*2d 671. The Court justified its denial of relief despite trial errors based on "[o]ther countervailing reasons, firmly founded in the efficient and fair administration of justice." *Id.* at 604–05, 397 *A.*2d 671.

The State has a strong interest in achieving finality. Without procedural rules requiring the consolidation of issues, litigation would continue indefinitely in a disconnected and piecemeal fashion. Each time a petitioner brought forward a new issue, attorneys and courts would waste their limited resources acquainting themselves with all of the complex details necessary to adjudicate it. When the grounds for challenging a conviction are consolidated, that investment need occur only once, and judicial resources can be more efficiently used to decide cases in a timely fashion. Moreover, relevant issues in a case are often interrelated. Adjudicating them separately would impair a court's ability to reach a result that fairly synthesizes all of the relevant factors into a just and reasoned outcome.

The rule incorporates a number of exceptions to ensure fairness to petitioners. If an issue could not reasonably have been raised in a prior proceeding, if it involves the infringement of constitutional rights, or if it presents exceptional circumstances involving a showing of fundamental injustice, then the procedural bar will be lifted. *See State v. Laurick,* 120 *N.J.* 1, 10, 575 *A.*2d 1340, *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 429, 112 *L.Ed.*2d 413 (1990); *State v. Cerbo, supra,* 78 *N.J.* at 605, 397 *A.*2d 671. Mitchell's petition did not present any of the above circumstances.

## A

Exception (a) to *Rule* 3:22–4 raises the bar if the ground for relief could not reasonably have been raised in a

prior proceeding. That exception sets an objective standard: for the petitioner merely to state that the ground had not occurred to him or her is not enough; the claim must be one that a reasonable attorney, aware of the relevant facts and law, could not reasonably have raised. Our courts have recognized such circumstances where new case law has changed the applicable standards and should be retroactively applied to the case at hand, *see State v. Nash,* 64 *N.J.* 464, 474–75, 317 *A.*2d 689 (1974); *State v. Koch,* 118 *N.J.Super.* 421, 429–30, 288 *A.*2d 295 (App.Div.1972), where the claim is based on testimony outside of the trial court that could not have been raised on direct appeal, *see State v. Sloan,* 226 *N.J.Super.* 605, 612, 545 *A.*2d 230 (App.Div.), *certif. denied,* 113 *N.J.* 647, 552 *A.*2d 171 (1988), or where the challenge is to the appellate proceedings themselves, *see State v. Morrison,* 215 *N.J.Super.* 540, 544, 522 *A.*2d 473 (App.Div.), *certif. denied,* 107 *N.J.* 642, 527 *A.*2d 463 (1987).

██ All of the information necessary to raise the claim regarding an insufficient factual basis for his plea was available to Mitchell when he made his direct appeal. The facts in issue turned exclusively on the record established by and for the plea and sentencing hearings. His co-defendant had already been acquitted by the time he was sentenced. His contention in his petition notwithstanding, no new "law" changing the nature of the legal principles applicable to his case was articulated between the time of his direct appeal and his petition for post-conviction relief. Thus, as the Appellate Division noted, Mitchell's petition does not fall within this exception.

B

██ If denying post-conviction relief to Mitchell would result in a violation of the state or federal constitutions, a court may hear his claim even though it should have been raised on direct appeal. *Rule* 3:22–4(c). That exception has been interpreted to allow courts to consider petitions for post-conviction relief when the defendant alleges that his constitutional rights

were seriously infringed during the conviction proceedings. *See State v. Sloan, supra,* 226 *N.J.Super.* at 612, 545 *A.*2d 230 (because right to counsel is a fundamental constitutional right, it falls within exception 4(c) to the bar against grounds not raised in prior proceedings); *State v. Owczarski,* 236 *N.J.Super.* 52, 58, 563 *A.*2d 1166 (Law Div.1989) (acceptance of a guilty plea where clearly not knowing and voluntary, and where no factual basis elicited, constitutes a constitutional deprivation falling under exception 4(c)).

■ Cloaking the claim in constitutional language will not guarantee relief. A court must scrutinize the assertion to ascertain whether constitutional rights are truly at stake. *State v. Trantino,* 60 *N.J.* 176, 180, 287 *A.*2d 177 (1972). Mitchell's petition asserted that the lack of a sufficient factual basis for his plea violated his due process rights. As discussed above, that claim does not raise an issue of constitutional dimension, nor would denying relief result in a constitutional violation. *See supra* at 577–578, 601 *A.*2d at 204.

■ Mitchell's petition also claims that at the sentencing hearing the court improperly made findings based on evidence outside the plea hearing record that contradicted the facts admitted by defendant in his plea hearing, leading to a sentence so "clearly unreasonable" as to "shock the judicial conscience" and violate his constitutional rights. Given the evidence in the plea hearing of Mitchell's knowing participation in the robbery and awareness of the beating taking place, imposition of the maximum sentence permitted by the plea agreement does not rise to the level of a constitutional violation justifying the use of exception 4(c).

## C

■ Finally, even if Mitchell's claims do not rise to the level of constitutional violations, would upholding the bar result in "fundamental injustice"? Although the standard by its nature precludes mechanical application, we have stressed that it

should be applied only in exceptional circumstances. *State v. Laurick, supra,* 120 *N.J.* at 10, 575 *A.*2d 1340; *State v. Cerbo, supra,* 78 *N.J.* at 605, 397 *A.*2d 671. As with any aspect of a petition for post-conviction relief, a defendant has the burden of proving that barring the petition would lead to injustice. *See State v. Laurick, supra,* 120 *N.J.* at 11, 575 *A.*2d 1340.

In defining fundamental injustice, the courts will look to whether the judicial system has provided the defendant with fair proceedings leading to a just outcome. "Fundamental injustice" will be found if the prosecution or the judiciary abused the process under which the defendant was convicted or, absent conscious abuse, if inadvertent errors mistakenly impacted a determination of guilt or otherwise "wrought a miscarriage of justice for the individual defendant." *See State v. Laurick, supra,* 120 *N.J.* at 10, 575 *A.*2d 1340 (quoting *State v. Cerbo, supra,* 78 *N.J.* at 607, 397 *A.*2d 671). The standard goes beyond constitutional infringements to any circumstances deemed "unjust." Although a petitioner would not have to prove that the issue of concern cost him the case, "to establish injustice there should at least be some showing that * * * [the alleged violation] played a role in the determination of guilt. * * * To conclude otherwise would exalt form over substance." *State v. Laurick, supra,* 120 *N.J.* at 13, 575 *A.*2d 1340.

No bright-line rule can dictate a court's determination of fundamental injustice. However, a sampling of some of the cases in which it has been identified or rejected may provide helpful guidance. In *State v. Clark,* 65 *N.J.* 426, 323 *A.*2d 470 (1974), the Court evaluated a petition for post-conviction relief based on an excessiveness-of-sentence claim that should have been brought on direct appeal. Although respecting the rule restricting such claims to direct appeals, the Court noted that "it may be and has been relaxed in egregious circumstances." *Id.* at 437, 323 *A.*2d 470. Because the Court believed that the consecutive sentences imposed violated the purposes of the Sex Offender Act under which the defendant had been sentenced

and were otherwise "grossly unfair and unjust to the defendant," the Court found that barring the petition would result in a fundamental injustice to the defendant. *Id.* at 436–38, 323 *A.*2d 470. Even though the violation in question was statutory rather than constitutional, the impact on the defendant—years of inappropriate incarceration—was deemed fundamentally unjust. *See also State v. Ervin,* 241 *N.J.Super.* 458, 464–65, 575 *A.*2d 491 (App.Div.1989) (in deciding to hear issues of illegality of sentence in light of new law, court cited to, *inter alia,* fundamental injustice section of *Rule* 3:22–4), *certif. denied,* 121 *N.J.* 634, 583 *A.*2d 328 (1990); *State v. Cummins,* 168 *N.J.Super.* 429, 433, 403 *A.*2d 67 (Law Div.1979) (conviction of defendant for disorderly conduct while an involuntarily-committed patient in a psychiatric hospital is fundamentally unjust because it imposes punishment on someone for "displaying the symptoms of his illness while in a place designed to treat that illness"); *State v. Allen,* 99 *N.J.Super.* 314, 316, 239 *A.*2d 675 (Law Div.1968) (because defendant had not been informed of his right to direct appeal, barring petition for post-conviction relief would be "contrary to fundamental justice").

The case law indicates that statutory, administrative, and common-law violations will not constitute fundamental injustice except in exceptional circumstances. In *Laurick,* the lack of notice regarding the availability of counsel for indigents where there was no constitutional right to counsel amounted to a violation of administrative or judicial policy that did not prejudice the defendant, and thus did not create a fundamental injustice in need of correction. 120 *N.J.* at 12–13, 575 *A.*2d 1340. In *Cerbo,* the failure of the police to seal wire-tapping tapes, in violation of a statute requiring them to do so, did not constitute a miscarriage of justice. 78 *N.J.* at 604–06, 397 *A.*2d 671.

Numerous other courts, based on their review of the record, have concluded without analysis that the facts presented do not present a situation of fundamental injustice that would justify allowing the petitioner to raise an issue that should have been

raised on direct appeal. *See, e.g., State v. Cacamis, supra,* 230 *N.J.Super.* at 5, 552 *A.*2d 616 ("Here, the record does not establish \* \* \* a fundamental denial of justice."); *State v. Boyd,* 165 *N.J.Super.* 304, 311, 398 *A.*2d 129 (App.Div.1979) (court did not "perceive, based on these facts, such fundamental injustice \* \* \* as to relieve defendants from pursuing ordinary review routes"), *certif. denied,* 85 *N.J.* 128, 425 *A.*2d 285 (1980).

▮▮▮▮ The Appellate Division mistakenly concluded that Mitchell's petition fell within the "fundamental injustice" exception to the bar against raising a claim that could have been raised in prior proceedings. In the first place, the Appellate Division's conclusion that it was not satisfied that there would be no injustice seems to misconstrue the burden of proof: the petitioner must initially allege specific facts, which, if believed, would demonstrate the likelihood of injustice by a preponderance of the evidence. In evaluating whether defendant's petition met that standard, we note its lack of evidence indicating any error in the determination of Mitchell's guilt and any sign of a miscarriage of justice.

Because petitioner's allegations did not set forth reasons to relax our court rules, we do not reach the merits of his claim.

IV

In conclusion, the Rules are imposed for a purpose. They already contain ample exceptions allowing their relaxation to ensure fairness and prevent injustice. We do not endorse their rigid, mechanical application; we state simply that the Rules and their exceptions should be conscientiously applied to the unique circumstances of each case with due respect for both the rule and the exception. The circumstances of this case do not present grounds for relaxing the rules. The judgment of the Appellate Division is reversed and the trial court's judgment denying the petition for post-conviction relief is reinstated.

CLIFFORD, J., concurring in the result.

STEIN, J., concurring in judgment.

I concur only in the judgment of the Court. In view of the majority opinion's thoughtful and painstaking discussion of the merits, *ante* at 581–583, 601 *A*.2d at 206–207, the opinion's assertion that "we do not reach the merits of [petitioner's] claim," *ante* at 589, 601 *A*.2d at 210, is indeed perplexing. When, as in this case, the merits must be addressed to determine whether any of the relevant exceptions to *Rule* 3:22–4 is applicable, the denial of post-conviction relief should be based both on the Rule and on the determination that defendant has established neither fundamental injustice nor a denial of his constitutional rights.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.