**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3214-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TRACY TISDOL, a/k/a
POETIC,

    Defendant-Appellant.

_____

Submitted February 8, 2021 – Decided March 24, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 95-11-1254.

Tracy Tisdol, appellant pro se.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tracy Tisdol appeals from the February 21, 2019 order of the Law Division denying his motion to correct an illegal sentence. We affirm.

## I.

In 1995, defendant, then nineteen, conspired with Meshach Greene and Corie Miller to rob two young women who were sitting in a car with the windows down on a summer night in Paterson. Miller was armed with a loaded handgun, which defendant had seen in his possession earlier that day.

The three men surrounded the women and demanded they turn over their money. When the victims said that they did not have any money, Miller cocked the gun and struck one of the women in the head. The assault caused the weapon to discharge. The bullet struck the other woman, lacerating several of her internal organs and lodging in her liver. Defendant and his co-conspirators fled the scene, leaving the gravely injured victim to bleed to death while her friend frantically tried to drive her to the hospital.

A jury convicted defendant of first-degree murder, N.J.S.A. 2C:11-3(a)(1); first-degree felony murder, N.J.S.A. 2C:11-(3)(a)(3); second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; two counts of first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree

A-3214-18

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b).

The court merged the felony murder conviction into the murder conviction, for which it sentenced defendant to life imprisonment with a thirty-year period of parole ineligibility. The conspiracy conviction was merged into the armed robbery convictions. The court sentenced defendant to a twenty-year period of incarceration with a ten-year period of parole ineligibility on each armed robbery conviction, with one sentence to run concurrent to the sentence for murder and one to run consecutive to the sentence for murder. For the possession of a weapon for an unlawful purpose, the court sentenced defendant to a ten-year term of imprisonment with a five-year period of parole ineligibility. Finally, the court sentenced defendant to a five-year term of imprisonment for the unlawful possession of a weapon conviction. The court directed that the sentences on the weapons convictions run concurrently with the murder sentence. In the aggregate, the court sentenced defendant to a term of life imprisonment, plus twenty years, with a forty-year period of parole ineligibility.

On direct appeal, defendant argued, along with other points, that the trial court erred when it imposed the maximum sentence for his armed robbery convictions and directed that the sentence for one armed robbery conviction run

3

consecutively to his sentence for murder. He also argued that his aggregate sentence was manifestly excessive. We affirmed defendant's convictions and sentence. State v. Tisdol, No. A-6056-96 (App. Div. Nov. 12, 1999). The Supreme Court denied certification. State v. Tisdol, 163 N.J. 396 (2000).

We subsequently affirmed the trial court's denial of defendant's first petition for post-conviction relief (PCR). State v. Tisdol, A-3698-03 (App. Div. Feb. 10, 2005). The Supreme Court denied certification. State v. Tisdol, 183 N.J. 586 (2005).

Defendant filed for a writ of habeas corpus in the United States District Court, which the court denied on September 25, 2006. Tisdol v. Cathel, No. Civ. A. 05-3823 (JAP) (D.N.J. Sep. 25, 2006). The Third Circuit affirmed, and the Supreme Court denied certiorari. Tisdol v. Milgram, 552 U.S. 1284 (2008).

Defendant subsequently filed his second PCR petition. Among the issues defendant raised was that his sentence was excessive. The trial court rejected the petition as time barred and substantively meritless. We affirmed. State v. Tisdol, No. A-1018-09 (App. Div. Oct. 29, 2010). The Supreme Court denied certification. State v. Tisdol, 205 N.J. 518 (2011).

On September 9, 2018, defendant filed a motion in the Law Division to correct an illegal sentence. In an oral opinion, the trial court denied defendant's motion, explaining as follows:

> I don't think that there's any basis whatsoever for the claim that there was an illegal sentence, which is truly the only legal basis under which this matter could be before the [c]ourt at this stage after appeals have been exhausted, after other issues raised in the two previous PCRs.
>
> . . . .
>
> As I noted, it was a standard murder sentence given, and there was a consecutive term imposed on one of the first[-]degree robberies, that with regard to the surviving victim.
>
> [W]hether . . . that sentence was lawful or excessive was addressed specifically by the Appellate Division in its decision. It was also addressed on the second PCR . . . . Those are fully adjudicated issues . . . .
>
> So there is nothing whatsoever illegal about the sentence, and . . . that truly ends our inquiry . . . .
>
> . . . .
>
> The only thing . . . which in theory could have been an argument [is] that males don't have their brain chemistry fully developed until the age of [twenty-five] or so . . . and there was an indication [defendant] had used drugs and alcohol. It might have been a [nineteen]-year-old brain going on [fifteen]. . . . But the law doesn't make that distinction.

A-3214-18

The legal age of majority was lowered to [eighteen] from [twenty-one] many years ago. It means that anyone [eighteen] years of age or older is subject to [the] full range of criminal penalties.

A February 21, 2019 order memorializes the court's decision.

This appeal follows. Defendant raises the following arguments for our consideration.

POINT I

DEFENDANT'S SENTENCE WAS ILLEGAL SINCE IT WAS NOT IMPOSED IN ACCORDANCE WITH LAW.

POINT II

THE SENTENCING COURT FAILED TO FOLLOW [STATE V. YARBOUGH] GUIDELINES FOR CONCURRENT SENTENCES.

POINT III

DEFENDANT'S SENTENCE EVIDENCES SENTENCE DISPARITY.

POINT IV

THE COURTS CONFUSED THE ACTIONS OF DEFENDANT TISDOL WITH DEFENDANT MILLER WHICH RESULTED IN AN EXCESSIVE SENTENCE FOR DEFENDANT TISDOL.

POINT V

STATUTE WHICH MANDATES A SENTENCE OF [THIRTY] YEARS TO LIFE FOR ALL OFFENDERS WHO MURDER WITHOUT CONSIDERING ANY FACTORS OF MITIGATION, INCLUDING THE OFFENDER'S AGE AND THE LEVEL OF CULPABILITY, VIOLATES THE PROPORTION-ATE PENALTIES C[L]AUSE OF THE EIGHT[H] AMENDMENT OF THE U.S. CONSTITUTION[.]

## II.

A motion to correct an illegal sentence may be filed at any time. R. 3:21-10(b)(5); State v. Schubert, 212 N.J. 295, 309 (2012). An illegal sentence "exceed[s] the penalties authorized by statute for a specific offense." State v. Murray, 162 N.J. 240, 246 (2000). "A sentence may also be illegal because it was not imposed in accordance with law. This category includes sentences that, although not in excess of the statutory maximum penalty," are not authorized by statute. Id. at 247. "In addition, a sentence may not be in accordance with law because it fails to satisfy required presentencing conditions" or "include a legislatively mandated term of parole ineligibility." Ibid. We review de novo the trial court's finding that a sentence is legal. Schubert, 212 N.J. at 303-04.

Having carefully reviewed the record, we agree with the trial court's conclusion that defendant has offered no cogent argument that the sentence imposed on him was illegal. Defendant received a life sentence with a thirty-

year period of parole ineligibility for first-degree murder. This sentence is authorized by N.J.S.A. 2C:11-3(b)(1), which provides, in relevant part, that

> a person convicted of murder shall be sentenced . . . by the court to a term of [thirty] years, during which the person shall not be eligible for parole, or be sentenced to a specific term of years which shall be between [thirty] years and life imprisonment of which the person shall serve [thirty] years before being eligible for parole.

"[B]ecause the crime of murder has no presumptive term, defendant, like every murderer, knows he is risking life in prison." State v. Abdullah, 184 N.J. 497, 508 (2005).

Defendant argues that he was sentenced for a longer term than permitted by the statute because his aggregate sentence is a life term, plus twenty years, with a forty-year period of parole ineligibility. Defendant errs, however, by conflating the aggregate sentence for his multiple convictions with the sentence he received for his first-degree murder conviction.

As explained above, in addition to the sentence defendant received for first-degree murder for the victim who was shot to death, he was also sentenced to a consecutive twenty-year period of incarceration with a ten-year period of parole ineligibility for the first-degree armed robbery of the victim who survived. As we held on defendant's direct appeal, the separate consecutive

sentence for one of the first-degree armed robbery convictions was authorized by law because the armed robbery of the victim who lived was a distinct criminal act against a person other than the murder victim. Defendant's aggregate sentence reflects more than just the sentence he received for first-degree murder.

Our decision in defendant's direct appeal also precludes his claim that his sentence is illegal because the sentencing court misapplied the holding in State v. Yarbough, 100 N.J. 627, 630 (1985). That issue has been adjudicated and is not an appropriate basis for a motion to correct an illegal sentence. See State v. Trantino, 60 N.J. 176, 180 (1972) (A prior adjudication on the merits of an issue on direct appeal is conclusive and cannot be relitigated, even if of constitutional dimension).

Nor are we persuaded by defendant's argument that he is entitled to an evidentiary hearing to determine whether his sentence is illegal because of a disparity in sentencing statewide for murder convictions. We recognize that our Supreme Court has "consistently stressed uniformity as one of the major sentencing goals in the administration of criminal justice." State v. Roach, 146 N.J. 208, 231 (1996). In support of his argument, however, defendant cites only to what he describes as a "list of criminal cases involv[ing] some defendant[s] who were convicted of murder with far more serious criminal histories, but were

A-3214-18

sentenced to thirty years without parole as opposed to having to serve the 'life' component and other[s] who were sentenced to life with thirty years."

Defendant appears to have compiled the information on which he relies from the Department of Corrections (DOC) website which contains a short profile of incarcerated offenders. The website includes an offender's convictions, dates of conviction, and sentences. It does not, however, indicate whether the offenders were convicted by a jury or entered a guilty plea, a significant omission, given that negotiated pleas often result in less severe sentences than convictions after trial for similar offenses. In addition, the website provides no information regarding the circumstances of the offenders' criminal acts or backgrounds, the details of which are crucial to a sentencing court's weighing of aggravating and mitigating factors. The information cited by defendant, therefore, is incomplete and missing critical information on which to compare his sentence to those given to other offenders.

Nor did defendant explain how the inmates were selected for inclusion on his list. He does not identify the offenders sentenced for murder whose information he encountered and decided not to include on his list. Defendant also did not produce evidence establishing the accuracy of the information on the DOC's website. He did not explain whether the DOC website includes

sentences for all offenders, including those who have completed their sentences, are remanded to a county jail or other facility, or who are housed out-of-State. Thus, even assuming the information on which defendant relies is accurate, it is woefully insufficient to establish a prima facie claim of a statewide disparity in sentencing for murder convictions warranting an evidentiary hearing.

Defendant also has not established a disparity in the sentences given to him and his codefendants. Such a disparity may invalidate an otherwise sound and lawful sentence. Id. at 232. Green, the codefendant with whom defendant was tried, was sentenced to life imprisonment, plus twenty years, with a forty-year period of parole ineligibility, the same aggregate sentence imposed on defendant. Both were unarmed when they participated in the robbery that resulted in their accomplice killing a young woman.

We also agree with the trial court that defendant has not established his sentence is illegal because the sentencing court failed to consider his youthful brain development. Defendant argues, in effect, that there is a growing medical consensus that key areas of the brain relevant to decision-making and judgment continue to develop in males into their early twenties. He argues a court must take that data into account at sentencing.

11

In support of his argument defendant relies on: (1) a February 2018 report and resolution of the House of Delegates of the American Bar Association (ABA) urging the organization to oppose imposition of a death sentence on any person who was twenty-one or younger at the time of their offense; (2) a January 2004 article of the ABA entitled "Adolescence, Brain Development and Legal Culpability;" (3) an undated and unsigned declaration by a neuropsychologist apparently prepared in support of a 2002 Texas state habeas corpus petition; and (4) a research paper of the MacArthur Foundation entitled "Less Guilty by Reason of Adolescence." These documents identify scientific evidence relating to brain development in young adults.

Defendant's argument must be examined in the context of recent legal developments concerning juvenile offenders. The United States Supreme Court has established, through a series of decisions issued between 2005 and 2016, that juveniles are developmentally different from adults and individualized consideration of these differences is necessary prior to imposing the harshest punishments available under law. See e.g., Roper v. Simmons, 543 U.S. 551, 578 (2005) (holding that imposing the death penalty on defendants convicted as juveniles violates the Eighth Amendment); Graham v. Florida, 560 U.S. 48, 82 (2010) (holding that imposing life term without parole on juveniles convicted of

non-homicide offenses is unconstitutional); and <u>Miller v. Alabama</u>, 567 U.S. 460, 465 (2012) (holding that mandatory life term without parole for juveniles convicted of homicide is unconstitutional).  The Court's holdings in each of these cases were predicated on "scientific and sociological notions about the unique characteristics of youth and the progressive emotional and behavioral development of juveniles."  <u>State in Interest of C.K.</u>, 233 N.J. 44, 68 (2018).

In <u>State v. Zuber</u>, 227 N.J. 422, 446-47 (2017), our Supreme Court held that "<u>Miller</u>'s command that a sentencing judge 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,' applies with equal strength to a sentence that is the practical equivalent of life without parole."  (quoting <u>Miller</u>, 567 U.S. at 480) (citation omitted).

Defendant argues that the scientific evidence that underpins the holding in these precedents has advanced to include the development of post-adolescent brains.  The legal precedents, however, do not support his argument.  The evidence that defendant cites dates from before and around the time the Court issued its opinion in <u>Zuber</u>.  It is similar to the evidence on which the Court relied to reach its holding in that case.  Yet, there is no indication in <u>Zuber</u>, or the precedents cited by the Court, that the constitutional protections established

A-3214-18

in recent decisions apply to offenders, like defendant, who commit crimes after they have reached the age of majority. See United States v. Marshall, 736 F.3d 492, 500 (6th Cir. 2013) (noting that, for Eighth Amendment purposes, an individual's eighteenth birthday marks the bright line separating juveniles from adults; "In short, Marshall is at the very most an immature adult. An immature adult is not a juvenile. Regardless of the source of the immaturity, an immature adult is still an adult.").

We note also that defendant had an opportunity at sentencing to present evidence of mitigating factors, including his age and immaturity, factors the sentencing court appears to have recognized when it found that defendant was influenced by Miller, the older codefendant who brought the gun to the robbery.

We have carefully considered defendant's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3214-18