**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4708-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JULIO R. RUIZ-VIDAL,

     Defendant-Appellant.

_____

> Submitted November 18, 2020 – Decided January 22, 2021
>
> Before Judges Alvarez and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 02-06-0095.
>
> Mitchell E. Ignatoff, attorney for appellant.
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Julio R. Ruiz-Vidal's post-conviction relief (PCR) petition alleging ineffective assistance of trial counsel was denied in part and granted in part without an evidentiary hearing. Defendant contends the PCR court erred in finding that his petition was time- and procedurally barred. He asserted he was denied an opportunity to seek admission into the pretrial intervention program (PTI) because counsel failed to: move for dismissal of second-degree charges against him that would have made it easier to gain entry into PTI; advise him he could apply to PTI despite the prosecutor's refusal to consent to his admission; and advise him he could appeal the prosecutor's refusal. We reverse and remand for an evidentiary hearing.

I

In late 2000, Detective Stephen Jones, New Jersey State Police, and Special State Investigator Mario Estrada, New Jersey Department of Law and Public Safety Division of Criminal Justice, began an investigation into reports by the New Jersey Division of Motor Vehicles (DMV) that there were criminal operations engaged in the illegal acquisition of driver's licenses at DMV agencies throughout the state, including the Edison Tano Mall DMV agency. A confidential informant advised them that "brokers" were obtaining driver's licenses for non-citizens without proper documentation. In exchange for money,

2

a broker would take individuals through the licensing process at a DMV facility, where an agency employee working with the broker would illegally provide them state-issued driver's licenses.

In early February 2001, three men, including defendant, went to Karla Andree-Quesada's home. They each paid Andree-Quesada, the broker, $1700 and were told to return with any identification documents they had. When they returned several days later, defendant brought his Guatemalan passport and driver's license, and an identification card that he obtained in California when he first arrived in the United States. Andree-Quesada then gave the men answers to the written driver's test. Rafael Cordero, Andree-Quesada's housemate, drove the men to the Edison Tano Mall DMV agency, which was under surveillance.

Once at the agency, Cordero directed the men to a counter to take the written driver's test. Defendant showed DMV clerk Raymond Hagenson his documents and took the test. Hagenson, who was involved in the scheme and admitted to being paid between $50 and $100 for hundreds of similar transactions, then told defendant to sign a driver's permit. After defendant and the other men obtained the illegal driver's permits, Cordero drove them back to Andree-Quesada's house. The plan was for Andree-Quesada to collect and safeguard their driver's permits until the next steps could be taken to process the

3

permits into driver's licenses. However, they never got to Andree-Quesada's house because they were stopped by police and arrested.

Defendant, a Guatemalan national, waived his rights to remain silent and to an attorney and confessed to paying $1700 to obtain a driver's license without having the proper documentation. Defendant did not indicate he was involved in Andree-Quesada's operations outside of going to her to get a license. Fourteen months later, defendant and five co-defendants were indicted for second-degree conspiracy, N.J.S.A. 2C:5-2; second-degree bribery, N.J.S.A. 2C:27-2(c) and N.J.S.A. 2C:2-6; second-degree official misconduct, N.J.S.A. 2C:30-2 and N.J.S.A. 2C:2-6; third-degree forgery, N.J.S.A. 2C:21-1(a)(2)-(3), and N.J.S.A. 2C:2-6; fourth-degree falsifying records N.J.S.A. 2C:21-4(a) and N.J.S.A. 2C:2-6; and third-degree tampering with public records, N.J.S.A. 2C:28-7(a)(1)-(2) and N.J.S.A. 2C:2-6.

Defendant failed to appear for a pre-arraignment conference on August 2, 2002, resulting in the issuance of a bench warrant for his arrest. He was arrested in Illinois almost two-and-half years later on March 8, 2005 and was extradited to New Jersey.

On May 6, 2005, defendant reached an agreement with the State and pled guilty to third-degree tampering with public records or information. During his

plea colloquy, defendant stated he paid someone to obtain a driver's license and presented false information to obtain the license. He gave no indication that he was aware of Hagenson's involvement with Andree-Quesada or Cordero or had any knowledge or connection with the scheme other than learning he could get a license from Andree-Quesada. The State agreed to dismiss the remaining counts against defendant and to recommend a non-custodial sentence of probation with time-served (sixty-seven days). In addition, the State agreed to release defendant on his own recognizance pending sentencing but reserved the right to ask the court to impose any lawful sentence if he failed to appear for sentencing.

On July 22, 2005, in accordance the plea agreement, defendant was sentenced to time-served and two years of probation conditioned on maintaining employment and paying the mandatory fines. The sentencing court also ordered defendant to notify Immigration and Naturalization Services[1] of his conviction. Defendant did not file a direct appeal.

Almost eleven years later, on May 18, 2016, defendant filed a motion to withdraw his guilty plea, alleging that his plea's factual basis was inadequate.

---

[1]  Now known as Immigration and Customs Enforcement and hereinafter referred to by its acronym, ICE.

The motion was denied.[2]  Defendant renewed the motion about ten months later, on March 7, 2017, again alleging he provided an inadequate factual basis for his plea.  This motion was also denied.[3]  Defendant appealed the denial but withdrew it five months later.

Continuing to seek relief from his conviction, defendant filed a PCR petition on January 23, 2019, alleging trial counsel was ineffective for not advising him of his rights pertaining to PTI.  Defendant asserted that within a year of filing his petition he learned he had the right to apply to PTI and to appeal the prosecutor's refusal of his counsel's request to consent to his admission into PTI.  See N.J.S.A. 2C:43-12 to -22; R. 3:28.  To support his claim, defendant submitted his trial counsel's certification stating that the prosecutor denied counsel's request to allow defendant's admission into PTI and that he did not tell defendant of the refusal or that defendant had a right to appeal the refusal.  Defendant also asserted the requirement that he notify ICE of his conviction was contrary to public policy.

Defendant later amended his petition, adding the claim that counsel was ineffective for not moving to dismiss the second-degree conspiracy charges

---

[2]  The court's written opinion is not in the record.

[3]  The court's written opinion is not in the record.

A-4708-18T1

against him on the basis that he was not a party to or engaged in Andree-Quesada's scheme to obtain illegal driver's licenses for undocumented individuals. He argued that if the charges were dismissed, he would not have had to show a compelling reason—a requirement for a defendant charged with a second-degree offense—to be admitted into PTI.

In a May 15, 2019 order, the PCR court ruled that defendant's judgment of conviction be amended to remove the ICE notification requirement,[4] but denied the rest of his claims without an evidentiary hearing. The court's reasoning was set forth in a written opinion, which we detail below.

II

When petitioning for PCR, the defendant must establish, "by a preponderance of the credible evidence," entitlement to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

---

[4] Because the State did not object to removal of the ICE notification requirement, the court directed the condition be removed from defendant's judgment of conviction.

A PCR claim is not a substitute for a direct appeal, id. at 583, and must hurdle some time and procedural bars. A PCR petition must be filed within five years after the entry of the judgment of conviction. R. 3:22-12(a)(1). A defendant seeking relief from the time bar under the rule must show "excusable neglect" and that a "fundamental injustice" will result. R. 3:22-12(a)(1)(A). To relax the five-year time bar, there must be a showing of "compelling, extenuating circumstances," State v. Milne, 178 N.J. 486, 492 (2004) (quoting State v. Afanador, 151 N.J. 41, 52 (1997)) , or alternatively, "exceptional circumstances," State v. Goodwin, 173 N.J. 583, 594 (2002) (quoting Afanador, 151 N.J. at 52).

A defendant is precluded from raising on PCR any issue that could have been raised on direct appeal unless

> (1) . . . the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (2) . . . enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or (3) . . . denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.
>
> [R. 3:22-4(a).]

A-4708-18T1

The mere raising of a PCR claim does not entitle the defendant to an evidentiary hearing as the defendant "must do more than make bald assertions that" ineffective assistance counsel was provided. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The PCR court should grant an evidentiary hearing and determine the merits of the claim only if the defendant has presented a prima facie claim of ineffective assistance. Preciose, 129 N.J. at 462. Yet, in deciding whether to grant an evidentiary hearing, the court "should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462-63.

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obliged to show not only the specific way counsel's performance was deficient, but also that the deficiency prejudiced the right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). These principles apply to a criminal defense attorney's representation of an accused in connection with a plea negotiation. Lafler v. Cooper, 566 U.S. 156, 162 (2012); Missouri v. Frye, 566 U.S. 134, 144 (2012).

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Since prejudice is not presumed, Fritz,

9

105 N.J. at 52, the defendant must demonstrate with "reasonable probability" that the result would have been different had counsel provided proper representation, Lafler, 566 U.S. at 163 (quoting Strickland, 466 U.S. at 464). "[F]or mixed questions of law and fact, [appellate courts] give deference . . . to the supported factual findings of the trial court, but review de novo the [trial] court's application of any legal rules to such factual findings." State v. Harris, 181 N.J. 391, 416 (2015).

### III

The PCR court found defendant's petition was time-barred for being filed well beyond the five-year limit after his conviction without any excusable neglect justifying delay and that no fundamental injustice would result if he was not allowed to seek relief. See R. 3:22-12. Additionally, the court determined the claim that counsel was ineffective for not moving to dismiss the second-degree charges was procedurally barred because it should have been raised in prior proceedings.[5]

Notwithstanding these time and procedural bars, the court explained that the petition was without merit on substantive grounds. Applying Strickland, the

---

[5] The PCR court was apparently referring to Rule 3:22-4(a)(1), which it did not cite.

A-4708-18T1

court found that counsel should have advised defendant of his right to apply to PTI and to appeal the prosecutor's refusal to admit him, but that the "likelihood of [defendant's] admittance into PTI was not high." The court determined defendant did "not set forth any facts showing that the result would have been any different" had he sought admission into PTI. As for the claim that counsel was ineffective for not moving to dismiss the second-degree conspiracy charges, the court determined the contention was without merit because he failed to show that dismissal of the charges would have resulted in a different outcome, i.e., his admission into PTI. We disagree with the court's rulings.

Defendant's petition was not time-barred. His PCR petition was framed in the context that his ineffective assistance claims could not have been raised until he became aware that he had a right to seek admission into PTI and a right to appeal the prosecutor's refusal to consent to his entry. Viewing the facts in the light most favorable to defendant, he filed for PCR within a year after he became aware of his PTI options. The State did not challenge this representation. Thus, defendant had "excusable neglect" for filing his petition almost fourteen years after his conviction. R. 3:22-12(a)(1)(A).

Defendant's claim that counsel was ineffective for not seeking dismissal of his second-degree charges was not procedurally barred. Defendant only

11

became aware of the benefit of dismissing the charges when he learned about his PTI options and that his prospects for being admitted into PTI were enhanced if the charges were dismissed. A defendant must demonstrate amenability to the rehabilitative process or compelling reasons for PTI admission to overcome the strong presumption against admission when: (1) the application is over the prosecutor's objection; and (2) defendant is charged with a second-degree crime. Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler, Current N.J. Court Rules, cmt. on Guideline 2, Guideline 3(i), at 1166-67 (2005); State v. Baynes, 148 N.J. 434, 442 (1997) (stating that under Guideline 3 there is a presumption against PTI admission for a defendant facing first- or second-degree charges).[6] A person charged with a second-degree offense must establish compelling reasons to benefit from PTI, meaning more than just being a first-time offender and accepting responsibility for the crime. State v. Nwobu, 139 N.J. 236, 252 (1995).

Considering the heavy burden to overcome the prosecutor's objection to defendant's PTI admission because he faced second-degree charges, dismissal

---

[6] The criteria for admission to PTI, as well as the procedures concerning applications for admission to the program, are set forth in N.J.S.A. 2C:43-12 to - 22 and, Rule 3:28 and the PTI Guidelines, which were in effect when defendant would have applied to PTI in 2005, were repealed effective July 1, 2018.

of those charges would have greatly enhanced his opportunity to get into the program. The PCR court found defendant would not have been successful in moving to dismiss the second-degree charges; thus, he was not prejudiced by counsel's failure to file a motion. We see it differently.

The second-degree charges accuse defendant with agreeing with others to pay a state DMV official more than $200 to give him a driver's permit that he was not legally entitled to receive. See N.J.S.A. 2C:5-2; N.J.S.A. 2C:30-2; N.J.S.A. 2C:2-6. A prosecutor "must present proof of every element of an offense to the grand jury and specify those elements in the indictment." State v. Campione, 462 N.J. Super. 466, 491-92 (App. Div. 2020) (quoting State v. Dorn, 233 N.J. 93-94 (2018)) (quoting State v. Fortin, 178 N.J. 540, 633 (2004)). Thus, only an indictment that is "manifestly deficient or palpably defective" shall be dismissed. State v. Hogan, 144 N.J. 216, 229 (1996) (citation omitted). "In a nutshell, a court examining a grand jury record should determine whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Feliciano, 224 N.J. 351, 380-81 (2016) (citation and internal quotation marks omitted).

Based upon our review of the grand jury transcripts, the State presented no evidence that defendant conspired or was an accomplice to further or promote official misconduct involving Hagenson to obtain fraudulent driver's licenses. A public servant is guilty of second-degree official misconduct when he obtains a benefit valued at more than $200 for knowingly conducting "an unauthorized exercise of his official functions[.]" N.J.S.A. 2C:30-2(a). Conspiracy requires proof of an agreement to commit a crime. N.J.S.A. 2C:5-2(a); State v. Samuels, 189 N.J. 236, 254 (2007). A person can be guilty of conspiring to commit a crime with an unknown person as long as he "knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime[.]" N.J.S.A. 2C:5-2(b). To act as an accomplice, a defendant must act with purpose or knowledge in promoting the prohibited acts. N.J.S.A 2C:2-6(c); State v. Savage, 172 N.J. 374, 388 (2002). An accomplice cannot be guilty of "official misconduct in the absence of proof that he shared with [the government employee] the intent to abuse [the governmental] office." State v. Hinds, 143 N.J. 540, 551 (1996).

The grand jury testimony of the State's sole witness, Detective Jones, merely demonstrated that defendant and two others paid $1700 to Andree-Quesada in exchange for shepherding them through a process to illegally obtain

14

driver's licenses. There was no indication defendant worked with Andree-Quesada or anyone else to further the scheme or its operation. There was no indication he recruited others to take advantage of the illegal acquisition of driver's licenses. There was no indication defendant was aware of Andree-Quesada's arrangement with Hagenson to secure his illegal driver's license. Simply put, defendant was a mere consumer of Andree-Quesada's operation. Based on the record before us, we conclude there was a reasonable probability that defendant would have been successful in dismissing the second-degree charges of conspiracy, bribery, and official misconduct. Thus, there is prima facie evidence that counsel was ineffective in not moving to dismiss the charges, which prejudiced him from being a more viable PTI candidate as a first-time offender facing only non-violent third- and fourth-degree charges.

Accordingly, we reverse and remand to the PCR Court to conduct an evidentiary hearing. The hearing will allow parties to present evidence and legal arguments as to whether trial counsel's conduct prejudiced defendant in not moving to dismiss the second-degree charges in order to enhance his PTI application. Should the court determine defendant was prejudiced, he shall be given a reasonable time to withdraw his guilty plea and move to dismiss the

A-4708-18T1

second-degree charges against him. If successful, he may then apply to PTI. We intimate no views on the outcome of these future proceedings.

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4708-18T1