# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2954-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JOHANNS CUADROS,

      Defendant-Appellant.

_____

Submitted January 21, 2021 – Decided March 1, 2021

Before Judges Ostrer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 99-01-0382 and 99-01-0383.

Adam W. Toraya, attorney for appellant.

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Johanns Cuadros appeals from a January 29, 2019 denial of his post-conviction relief (PCR) petition following an evidentiary hearing. We affirm.

Defendant was charged under separate indictments with two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(5). His victims were fourteen years old. Defendant pled guilty to amended charges of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), regarding each victim. In exchange for his pleas, the State recommended that he receive a county jail sentence not to exceed 364 days, as a condition of probation, that he undergo counseling and not have contact with his victims. On May 26, 1999, he was sentenced in accordance with the plea agreement to five years of probation, a 364-day jail term, no contact with his victims and counseling, along with the mandatory assessments. Defendant filed no direct appeal from his conviction or sentence.

On November 28, 2016, while facing deportation, defendant collaterally challenged his seventeen-year-old judgment of conviction by filing a pro se petition for PCR. Defendant alleged he was denied effective assistance of counsel, "as he was not advised of potential immigration consequences" related to his guilty pleas. PCR counsel amended defendant's petition in July 2018, alleging trial counsel was ineffective because he misadvised defendant about the

consequences of his guilty pleas. Specifically, defendant asserted his trial attorney told him not to worry about being deported since he was a lawful permanent resident and would be serving county jail, versus prison, time under his recommended sentence.

In his amended petition, defendant also argued his guilty pleas were defective under Rule 3:9-2, because he did not realize his guilty pleas would lead to deportation, and he claimed his pleas resulted from the "the coercive conduct of trial counsel." Further, defendant contended he was entitled to withdraw his pleas under the Slater test[1] and that the time bar on his petition should be relaxed, due to excusable neglect and because enforcement of the time bar would result in a fundamental injustice.

In November 2018, the PCR judge conducted an evidentiary hearing to address defendant's claims. Trial counsel testified at the evidentiary hearing. He stated his testimony was based on his recollection, as he no longer possessed defendant's file, except for a copy of defendant's plea and sentencing transcripts. Trial counsel affirmed he had practiced law since 1976, and had "an active criminal practice," but also handled immigration and real estate cases when he represented defendant. Trial counsel testified he was aware of defendant's

---

[1] State v. Slater, 198 N.J. 145 (2009).

A-2954-18

citizenship status at the time of the plea, and that it was his practice to "go over every item on the plea form" with a client. Therefore, he would have reviewed the citizenship question at Question 17. Further, trial counsel stated he would have circled "N/A" on Question 17, if immigration consequences were not relevant to the defendant. In this instance, trial counsel confirmed Question 17 was answered by circling "Yes" and testified what when a client's response to this question was answered in the affirmative, it was his practice to "go over the possibilities or the potential of any dire consequences" resulting from the plea. Trial counsel also confirmed that at sentencing, he told the judge, "there is an immigration situation that may come up in the future. My client is a permanent resident. He's not a citizen of the United States. These charges may cause a problem with his status here, may eventually cause a deportation problem." Further, trial counsel stated he knew when he was negotiating defendant's plea agreement that defendant faced exposure for consecutive ten-year prison terms and mandatory compliance with the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23, on his second-degree charges.

Defendant also testified at the evidentiary hearing. On direct examination, he claimed he relied on his trial attorney's assurances he would not suffer immigration consequences as a result of his pleas. Additionally, he stated that

when he was "picked up by Immigration and Customs [Enforcement]" (ICE), he was unaware he "could be picked up by them." Defendant also testified he did not understand when he pled guilty in 1999 that there was a possibility of deportation because he was "just told that it wouldn't be a problem." Further, on redirect, defendant testified that if he had known he would be deported, or there was a possibility of deportation, he would not have entered his plea. He explained, "[i]f there was a certainty that I was going to be deported, I would have rather taken my chances and not build a life here, do everything that I did here . . . . I might as well have started somewhere else when I was younger."

Defendant attested he was currently married, had two children, was gainfully employed and paid taxes. When defendant was asked by PCR counsel how he came to be picked up by ICE, the assistant prosecutor objected. The PCR judge ruled, "it doesn't make any difference why or how he was picked up" by ICE. However, the judge also acknowledged defendant had "no subsequent record after this conviction." Following a brief discussion between counsel and the judge, PCR counsel concluded his direct examination by stating his client had "lived a law-abiding life" and he had wanted the court to "hear it from" defendant.

On cross-examination, defendant conceded he was well aware of his charges under the original indictments. Further, he admitted he "had an intimate situation with [his fourteen-year-old victim, S.S.]"[2] which "involved her genitals" and him. When defendant was asked about his second victim, C.J., the following exchange occurred:

> Assistant Prosecutor: Alright, and isn't it a fact that you vaginally penetrated C.J.?
>
> Defendant: Yes.
>
>      . . . .
>
> Assistant Prosecutor: And if that witness, C.J. took the stand at . . . trial and said that you vaginally penetrated her, she'd be telling the truth, right?
>
> Defendant: Yes.
>
> Assistant Prosecutor: So - - and as to the other victim, S.S., if she got on the stand and she said that you vaginally penetrated her . . ., that would be the truth, wouldn't it?
>
> Defendant: It depends on what you mean by . . . penetration - - again going back 20 years if, 19-years-old, not understanding the legal system and having someone tell me that you have to go before the judge and say that you did this for your gratification—you know I just followed procedure. So, if you're asking me if that would be true, no, but I had to take a plea.

---

[2] We reference the victims in this case by their initials to protect their privacy. R. 1:38-3(c)(9) and (12).

A-2954-18

And in order to take a plea, I had to make certain statements.

Assistant Prosecutor: But you just told this judge that you vaginally penetrated C.J.

Defendant: I - - I did, because I'm not going to tell you something that's not true.

Assistant Prosecutor: So you got a good deal. You were facing minimally ten years in State Prison for vaginally penetrating C.J. and you got 364 days as a condition of probation, correct?

Defendant: That's - - that was the term that I got, correct.

Additionally, on cross-examination, defendant acknowledged that trial counsel bargained down the State's original plea offer from a ten-year prison term, to a five-year term, before he obtained the State's offer for a 364-day jail term. Asked if that was a "pretty good" deal, defendant answered, "[y]es, it was." Defendant also conceded that when he answered Question 17 on his plea form, he could "speak and read English perfectly." The assistant prosecutor inquired if the "real reason why" defendant petitioned the court was "because you do not want to be deported, correct?" Defendant answered, "[o]f course I don't; that's right."

The PCR judge posed additional questions to defendant. The judge asked whether trial counsel discussed defendant's potential immigration consequences

7

with him. Defendant answered in the negative, adding, "[n]o consequence at all was discussed." The judge then referred to PCR counsel's memorandum wherein he represented defendant's trial counsel inaccurately advised him he would not be deported. Defendant then shifted his testimony to state trial counsel misinforming him about the potential consequences of his plea. Finally, the PCR judge asked if defendant recalled trial counsel saying at sentencing that defendant's charges "may cause a problem with his status here" and "may eventually cause a deportation problem." Defendant acknowledged he remembered trial counsel making these statements.

Following defendant's testimony, the PCR judge reserved his decision. On January 29, 2019, the judge denied defendant's PCR petition, finding it was time barred under Rule 3:22-12. The judge determined defendant failed to establish the seventeen-year delay in filing his petition was due to "excusable neglect" and there was "a reasonable probability that, if his factual assertions [were] true, enforcement of the time bar would result in a fundamental injustice." Additionally, referencing State v. Mitchell, 126 N.J. 565, 579-80 (1992), the judge noted that the time bar should not be relaxed absent "'exceptional circumstances' such that strict adherence to the five-year time bar of [Rule] 3:22-12 would result in an injustice."

The judge also found defendant's defective plea and <u>Slater</u> arguments could have been raised on direct appeal, so they were procedurally barred under <u>Rule</u> 3:22-4.  Lastly, the judge concluded that even if defendant's petition was neither time barred nor procedurally barred, defendant failed to demonstrate his trial counsel was ineffective, pursuant to the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (holding that in order to establish ineffective assistance of counsel, a defendant must demonstrate substandard representation by counsel and prejudice to the outcome as a result).

On appeal, defendant raises the following arguments:

> POINT ONE
>
> THE COURT ERRED IN DENYING DEFENDANT THE RIGHT TO TESTIFY AT HIS EVIDENTIARY HEARING ABOUT THE REASON FOR HIS DELAYED FILING OF HIS PCR AND THEN DENIED HIS PETITION BY SPECIFICALLY FINDING THAT HE HAD NOT GIVEN ANY EXPLANATION ON WHICH THE COURT COULD FIND A BASIS TO RELAX THE PROCEDURAL TIME BAR UNDER [RULE] 3:22-12.
>
> POINT TWO
>
> THE PCR COURT'S ORDER SHOULD BE REVERSED AND THE MATTER REMANDED TO THE TRIAL COURT TO ALLOW THE DEFENDANT TO VACATE HIS GUILTY PLEA BECAUSE THE PCR COURT ERRED IN DETERMINING THAT DEFENDANT DID NOT MEET HIS BURDEN

UNDER THE STRICKLAND STANDARD OF
INEFFECTIVE ASSISTANCE OF COUNSEL.

We find these arguments unconvincing, in light of the record and
applicable legal standards.

Our review following an evidentiary hearing for PCR "is necessarily
deferential to a PCR court's factual findings based on its review of live witness
testimony." State v. Nash, 212 N.J. 518, 540 (2013). Where an evidentiary
hearing has been held, we should not disturb "the PCR court's findings that are
supported by sufficient credible evidence in the record." State v. Pierre, 223
N.J. 560, 576 (2015) (citation omitted). We review any legal conclusions of the
court de novo. Nash, 212 N.J. at 540-41.

Regarding Point I, we note that Rule 3:22-12(a)(1)(A) generally requires
that absent a defendant's "excusable neglect" and the "reasonable probability"
that a "fundamental injustice" would result if "defendant's factual assertions
were found to be true," a first PCR petition must be filed no more than five years
"after the date of entry . . . of the judgment of conviction that is being
challenged." When a PCR petition is filed more than five years after the
Judgment of Conviction,

> a PCR judge has an independent, non-delegable duty to
> question the timeliness of the petition, and to require
> that defendant submit competent evidence to satisfy the

> standards for relaxing the rule's time restrictions pursuant to Rule 3:22-12. Absent sufficient competent evidence to satisfy this standard, the court does not have the authority to review the merits of the claim.
>
> [State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018).]

A claim of excusable neglect requires "more than simply providing a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). To avoid application of the time bar in Rule 3:22-12(a)(1), the defendant must show the failure to file a petition within the time required was due to "compelling, extenuating" or "exceptional circumstances." State v. Brewster, 429 N.J. Super. 387, 400 (App. Div. 2013) (quoting State v. Milne, 178 N.J. 486, 492 (2004)). In determining whether the defendant has made the required showing for relaxation of the rule, the court must consider: (1) "the extent and cause of the delay"; (2) "the prejudice to the State"; and (3) "the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Afanador, 151 N.J. 41, 52 (1997) (quoting Mitchell, 126 N.J. at 580).

Seeking relaxation of the five-year time bar, defendant contends the PCR judge

erred by continuously cutting off PCR counsel's line of questioning and preventing testimony that would have specifically addressed when and how he first learned he was facing deportation consequences. This is directly relevant to the issue of excusable neglect. The fact that he never encountered any law enforcement for fifteen years supports his claim that he had no idea he was facing immigration consequences.

We are not persuaded.

The transcript from the evidentiary hearing reveals that as soon as PCR counsel asked defendant how he came to be detained by ICE, the State objected. PCR counsel made clear he wanted to illustrate to the court that defendant had no contact with law enforcement after his 1999 conviction, until he was detained by ICE. The PCR judge promptly accepted the fact defendant had "no subsequent record after this conviction" so he had no contact with law enforcement from the time he was convicted until he was detained by ICE. But, as the judge correctly found, defendant's lack of contact with law enforcement following his conviction did not establish excusable neglect for the delayed filing of his PCR petition.

As the plea form and sentencing transcript reflect, defendant was notified of the immigration consequences of his plea long before removal proceedings were commenced. Not only did defendant's answer to Question 17 on the plea form acknowledge his status, but at sentencing, trial counsel specifically noted

12

his concern that defendant could be deported once convicted. More importantly, as the PCR judge observed, even if trial counsel did not provide defendant with correct advice about the immigration consequences of his plea, defendant's assertions of ineffective assistance of counsel claims were insufficient to overcome the Rule 3:22-12 time bar. Referring to Brewster, 429 N.J. Super. at 400, the PCR judge aptly noted inaccurate advice at the time of the plea does not establish excusable neglect, for if it did, "long-convicted defendants might routinely claim they did not learn about the deficiencies in counsel's advice on a variety of topics until after the five -year-limitation period had run." Also, "[a] defendant cannot decide to remain intentionally ignorant of the legal consequences of his decision as a means of establishing excusable neglect." Brown, 455 N.J. Super. at 471.

We also are satisfied the PCR judge correctly found defendant failed to establish that enforcing the five-year time bar would result in a fundamental injustice. As our Supreme Court has stated, "[o]ur courts will find fundamental injustice when the judicial system has denied a 'defendant with fair proceedings leading to a just outcome' or when 'inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice.'" Nash, 212 N.J. at 546 (quoting Mitchell, 126 N.J. at 587). However, here, the PCR

judge concluded defendant's purported lack of awareness of his immigration consequences did not implicate his guilt of the charges. See Brewster, 429 N.J. Super. at 401 (no "fundamental injustice" where defendant's "knowledge of the risk of deportation did not affect the truth-finding function of the court").

Regarding Point II, we also are convinced the PCR court properly rejected defendant's ineffective assistance of counsel and Slater arguments. However, we part ways with the PCR judge's conclusion that defendant's Slater argument was procedurally barred, because a motion to withdraw a plea may be made at any time. State v. O'Donnell, 435 N.J. Super. 351, 368 (App. Div. 2014). However, we affirm the court's denial of the plea withdrawal for different reasons. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (recognizing that an appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court").

As a threshold matter, we observe that different rights are implicated by a petition for PCR based on ineffective assistance of counsel and an application to withdraw a guilty plea. O'Donnell, 435 N.J. Super. at 368. "To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate [a] reasonable likelihood of succe[ss] under the test set forth in Strickland[], 466 U.S. . . . at 694 . . ., which we adopted in State v. Fritz, 105

N.J. 42, 58 (1987)." State v. Preciose, 129 N.J. 451, 463 (1992). Under the first Strickland prong, a "defendant must show that [defense] counsel's performance was deficient." Strickland, 466 U.S. at 687. Under the second prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In demonstrating that counsel's performance was deficient under the first prong of Strickland, a defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 689). Further, because prejudice is not presumed, ibid., a defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding, United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

To justify vacating a guilty plea premised on ineffective assistance of counsel, a defendant must satisfy a modified Strickland standard.

> When a guilty plea is part of the equation, . . . a defendant must show that (i) counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases" and (ii) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."

> [State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)
> (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)
> (alteration in original)).]

Moreover, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

On the other hand, defendant's motion to withdraw his plea must be separately considered under the standard enunciated in Slater. The Court held:

> trial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [Slater, 198 N.J. at 157-58 (citations omitted).]

The Slater Court further held:

> The same factors are to be used for motions filed either before or after sentencing, but the timing of the motion will trigger different burdens of proof for the movant: pre-sentence motions to withdraw a plea are governed by the "interest of justice" standard in Rule 3:9-3(e), while post-sentence motions are subject to the "manifest injustice" standard in Rule 3:21-1.
>
> [Id. at 158.]

16

Guided by these distinct principles, we first address defendant's claim of error regarding the PCR judge's analysis of his ineffective assistance of counsel claims. As we have noted, the PCR judge considered the merits of defendant's ineffective assistance of counsel claims, notwithstanding the fact defendant's application was time barred. Finding defendant's case was "governed by pre-Padilla law," the judge noted defendant was required under the first Strickland prong to demonstrate that trial counsel affirmatively misled him about the immigration consequences of his guilty pleas. The judge determined defendant's proofs fell short in this regard, pointing to defendant's plea form answer at Question 17, as well as his testimony at the plea hearing when he confirmed he had no questions for his attorney, he was satisfied with counsel's services, and was not promised anything that was not placed on the record. Further, the judge credited trial counsel's testimony that he discussed defendant's immigration consequences with him and also noted those consequences on the record at sentencing. Further, the judge found defendant failed to satisfy the second Strickland prong. The judge concluded defendant's claim that he would have rejected the State's offer had he known of his immigration consequences of his plea was a "bald assertion." He added that rejecting the State's offer would have been "absolutely irrational under the circumstances," in light of the seriousness

17

of the charges pending against him, his exposure for significant prison time, and "certain deportation upon completion of any custodial sentence." We perceive no basis to disturb the judge's decision in this regard, as it was amply supported by the credible evidence in the record.

Finally, in considering defendant's motion to withdraw his plea, although the PCR judge did not extensively analyze the <u>Slater</u> factors in his opinion, he explicitly found defendant did not assert a colorable claim of innocence. This finding is supported by defendant's own admissions during the evidentiary hearing, in terms of his criminal acts against his victims. Moreover, the nature and strength of defendant's reasons for withdrawing his pleas were not convincing. Indeed, the judge found defendant's allegations "not credible" and his testimony "unsupported," given what was set forth in the face of "documentary evidence – e.g. the plea form; plea transcript; and sentencing transcript." Further, defendant candidly admitted on cross-examination that the "real reason why" he petitioned the court was "because [he did] do not want to be deported." Also, the judge noted defendant's knowledge of his deportation risk did not affect the "truth-finding function" of the court when it accepted his plea.

A-2954-18

Regarding the third <u>Slater</u> factor, there is no question but that a plea bargain existed in this matter. As to the final <u>Slater</u> factor, the PCR judge noted that "[a]s time passes, justice becomes more elusive and the necessity for preserving finality and certainty of judgments increases." The judge also found that "allowing the Petitioner to proceed, seventeen years post-conviction, would greatly prejudice the State." Additionally, without holding defendant to the more rigorous "manifest injustice" standard contemplated for post-sentencing <u>Slater</u> motions, the judge concluded defendant failed to demonstrate an "injustice" would result "if relief from [a] procedural bar was not obtained." Under these circumstances and given the credible testimony trial counsel presented at the evidentiary, we perceive no basis to second-guess the judge's decision to deny defendant's <u>Slater</u> application.

To the extent we have not specifically addressed any of defendant's remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2954-18