**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1732-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SEAN D. HARRIS, a/k/a
TWIZ TWITTER,

    Defendant-Appellant.

_____

Submitted October 23, 2024 – Decided December 24, 2024

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 09-12-2438.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Christopher W. Hsieh, Designated Counsel, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Sean Harris appeals from the November 9, 2022 order denying his second application for post-conviction relief (PCR).  Following our review of the record and the applicable legal principles, we affirm.

I.

On June 7, 1997, nineteen-year-old Andrew Williams left his apartment in Asbury Park he shared with his girlfriend planning to meet her later at a concert.  However, he never made it to the concert and never returned to the apartment.  Williams' decomposed body was found five days later in a Neptune park by public works employees.

The murder remained unsolved for several years.  In June 2005, Wayne Davis advised the Monmouth County Prosecutor's Office he was aware of information regarding the murder, which ultimately led to several individuals being identified as possibly participating in the murder:  defendant, Alphonso Edwards, Jr.,[1] Darren Sims, Cedric Smith, Jason Turner, Antonio Grant, and Philip Wylie.  Defendant was viewed as the "father figure" of the group. The

---

[1]  When Edwards, Jr., learned Grant had been questioned about the homicide, he confided in his father, Alphonso Edwards, Sr., that he was present when Williams was tied to a chair, beaten, and stabbed by defendant.  Believing his son had not committed the murder, Edwards Sr. also provided the police with the names of the individuals involved in Williams' killing, including defendant.

suspects grew up together in Asbury Park and referred to themselves as the "Dirty Dwellers."

Edwards, Jr., Sims, Smith, Turner, Grant, and Wylie all testified at defendant's trial.[2]  The testimony revealed that Williams went to defendant's apartment in Asbury Park on the evening of June 7, 1997.  Edwards, Jr., Sims, Smith, Turner, Grant, and Wylie were also at the apartment.  Wylie and Williams got in a physical fight and defendant joined in assaulting Williams. Defendant subsequently ordered the other co-defendants to tie Williams to a chair.  They then "beat him with brass knuckles, burned him repeatedly with cigarette butts, [and] stabbed him."  They also strangled Williams with a cord and then hanged him from a pipe in the ceiling of the apartment.

This attack stemmed from defendant's suspicion that Williams had burglarized defendant's home and, on another occasion, robbed his sister. Defendant also pointed a gun at Williams' head during the assault to get him to confess.  After Williams was dead, defendant wrapped his body in a sheet and drove it to a park in Neptune where he dumped it, but not before stabbing

---

[2] Defendant and his six co-defendants were arrested and charged with murder in May 2009.  Five of the six co-defendants pled guilty to aggravated manslaughter, and Turner pled guilty to reckless manslaughter.  Their plea agreements required them to provide truthful testimony at trial.

A-1732-22

Williams and cutting his throat with a knife to ensure his death. Defendant directed Edwards, Turner, and Grant to clean up the apartment while defendant, Wylie, and Smith dumped the body.

Later at the apartment, defendant instructed the six co-defendants to "say nothing" about the murder and to indicate as an alibi they were at a concert at the time of the killing. Defendant also collected and disposed of the cleaning supplies and clothes of the co-defendants. Despite defendant's directions, Wylie told Davis about the killing that same evening, which led to Davis' disclosure several years later.

All of the individuals involved, except defendant, eventually confessed to police regarding their involvement in Williams' killing. They testified they participated in the killing because they were afraid of defendant and did not want to end up like Williams.

Defendant was convicted following a jury trial of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or (2). He was sentenced to forty-five years in prison, subject to thirty-five years parole ineligibility.

Defendant appealed his conviction and sentence, raising five points: the prosecutor's comments in summation exceeded the bounds of propriety and a mistrial should have been granted; the entire testimony of Edwards, Sr.

constituted inadmissible hearsay; the prosecutor questioned a cooperating witness about his fear of defendant, thereby interjecting that defendant had bad character and a propensity for violence; the prosecutor used the "truthful testimony" requirement of the plea to bolster the co-defendants' credibility which constituted "vouching;" and the court doubled counted defendant's prior record in sentencing him. In August 2015, we affirmed. State v. Harris, No. A-6339-11 (App. Div. Aug. 27, 2015) (slip op. at 9-10).

Defendant filed, pro se, his first PCR petition on February 25, 2016. He raised five claims of ineffective assistance counsel, alleging his trial attorney failed to: (1) challenge the allegedly defective criminal complaint; (2) argue prosecutorial misconduct in violation of Brady v. Maryland[3]; (3) conduct their own independent investigation; (4) challenge the grand jury proceedings; and (5) contest the prosecutor's alleged improper vouching for a State witness during summation. Defendant was appointed counsel for his first PCR, and counsel filed an amended PCR petition incorporating defendant's pro se arguments. On June 29, 2018, the first PCR court denied the petition.

Defendant appealed, arguing the case should be remanded for an evidentiary hearing based on trial counsel's alleged failure to conduct a proper

_____

[3] 373 U.S. 83 (1963).

investigation. On October 8, 2019, we affirmed, holding that "the record supports the [first] PCR court's conclusion that defendant failed to present a prima facie case of ineffective assistance of counsel," and thus "defendant was not entitled to an evidentiary hearing." State v. Harris, No. A-5830-17 (App. Div. Oct. 8, 2019) (slip op. at 9).

Defendant then filed a petition for writ of habeas corpus in the United States District Court, District of New Jersey, for relief from his convictions under 28 U.S.C. §2254. Defendant moved to stay those proceedings pending the state court's consideration of a second PCR as to his "five unexhausted pro se claims of ineffective assistance of counsel." The district court granted the stay on April 26, 2021, "until [defendant] has exhausted the claims in his second PCR" and that "within thirty (30) days of exhausting his claims . . . [defendant] may request that this Court reopen this matter and lift the stay . . . ." Harris v. Grewal, No. 20-7180, 2021 U.S. Dist. LEXIS 79755, at *3 (D.N.J. Apr. 26, 2021).

In June 2021, defendant filed his second PCR petition alleging ineffective trial counsel on the five pro se claims asserted in his first PCR, which he asserts were not properly addressed by the first PCR court. Specifically, plaintiff alleged: (1) trial and appellate counsel failed to challenge the allegedly

defective criminal complaint; (2) trial and appellate counsel failed to argue prosecutorial misconduct in violation of Brady v. Maryland; (3) trial counsel failed to conduct his own independent investigation; (4) trial and appellate counsel failed to challenge the grand jury proceedings; and (5) trial and appellate counsel failed to challenge the prosecutor's allegedly improper vouching for a State witness during summation.

Defendant's counsel for his second PCR also filed a brief arguing that the first PCR counsel failed to properly preserve and raise the original pro se claims, which were not addressed in the first PCR judge's opinion. Second PCR counsel further argued that first PCR counsel failed to file a motion for reconsideration to remedy the first PCR court's failure to consider defendant's pro se claims, and that the first PCR appellate counsel failed to address the five pro se issues and failed to seek a remand due to the first PCR court's failure to address them. Second PCR counsel asserted that these errors deprived defendant of an opportunity to preserve his claims in the federal writ of habeas corpus.

On November 9, 2022, the second PCR court issued an order and written decision dismissing the second PCR petition. The court stated that under Rule 3:22-4(b), a "subsequent petition for [PCR] shall be dismissed unless: (1) it is timely under [Rule] 3:22-12(a)(2); and (2) it alleges on its face . . . (C) a prima

facie case of ineffective assistance of counsel that represented the defendant on the first . . . application for [PCR]." (alterations in original). The court noted that Rule 3:22-12(a)(2) states that "no second or subsequent petition shall be filed more than one year after . . . (C) the date of the denial of the first or subsequent application for [PCR] where ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged." (alterations in original). Because the first PCR court denied defendant's first PCR on June 29, 2018, and defendant filed his second PCR on June 9, 2021, the second PCR court determined his petition was untimely under Rule 3:22-12(a)(2)(C).[4]

The second PCR court also held that even if it "were to consider the merits of defendant's petition, he [did] not present[] a prima facie case of ineffective assistance" of counsel. The court stated that defendant's pro se claims "were either previously considered or totally lack merit."

---

[4] The second PCR court also rejected defendant's argument that the court should "relax the strict time bar because [defendant's second] PCR was filed after the issuance of a stay of proceedings in his application for a writ for habeas corpus relief." The court stated that "a defendant's pursuit of federal habeas corpus relief will not 'extend the time frame within which to file a PCR petition.'" (quoting State v. Milne, 178 N.J. 486, 494 (2004)).

## II.

Defendant raises the following points on appeal:

POINT I

THE PCR COURT ERRED IN ORDERING PROCEDURAL DISMISSAL OF THE PCR PETITION AND DEPRIVING PETITIONER OF MEANINGFUL REVIEW OF HIS PROPERLY RAISED CLAIMS.

POINT II

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF FIRST PCR COUNSEL AND APPELLATE COUNSEL AND HIS DUE PROCESS RIGHTS WERE VIOLATED BECAUSE COUNSEL FAILED TO PROPERLY ADVANCE HIS PRO SE PCR CLAIMS.

> A. PCR Trial Counsel And Appellate Counsel Were Ineffective for Failing to Challenge the Defective Complaint in this Matter.
>
> B. PCR Counsel and Appellate Counsel Were Ineffective for Failing to Properly Address the Allegation that Trial Counsel Never Challenged the State's Brady v. Maryland Violation.
>
> C. PCR Counsel and Appellate Counsel Were Ineffective for Failing to Preserve and Address Trial and Appellate Counsels' Failure to Challenge the Grand Jury Proceeding.

D.    Appellate Counsel Was Ineffective For Failing to Preserve and Address Petitioner's Pro Se Issue That Trial and Appellate Counsel Were Ineffective For Failing to Challenge the Prosecutor's Improper Vouching For State Witnesses During Trial.

POINT III

PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING.

In the absence of an evidentiary hearing, we review de novo the factual inferences drawn from the record by the PCR judge, as well as the judge's legal conclusions.   State v. Harris, 181 N.J. 391, 421 (2004); see also State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020).  We review a PCR judge's decision to deny a defendant's request for an evidentiary hearing under an abuse of discretion standard.  See State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020).

To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1999), as adopted by State v. Fritz, 105 N.J. 42, 58 (1987), by a preponderance of the evidence.  "First, the defendant must show that counsel's performance was deficient."   Strickland, 466 U.S. at 687.   This requires demonstrating that "counsel made errors so serious that counsel was not

10

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The United States Constitution requires "reasonably effective assistance." Ibid. An attorney's performance will not be deemed deficient if counsel acted "within the range of competence demanded of attorneys in criminal cases." Ibid. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's dissatisfaction with counsel's "exercise of judgment during the trial. . . . while

11

ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (internal citation omitted).

Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense." 466 U.S. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

## A.

Defendant asserts the second PCR court erred in dismissing his petition on procedural timeliness grounds, without consideration of the merits. Defendant relies on State v. Hannah, 248 N.J. 148 (2021), because his "ineffective assistance of trial counsel claims evaded meaningful judicial review despite his continuous efforts to have those claims considered." He contends the first PCR court failed to address all of his pro se claims and that first PCR

counsel and appellate counsel "failed to take the rudimentary steps necessary to advance and preserve the unconsidered claims."

Defendant argues that a court is not "'powerless to correct a fundamental injustice' merely because a procedural rule might otherwise bar a PCR claim from being considered." (quoting Hannah, 248 N.J. at 178). He maintains he "was denied fair proceedings, as the first PCR court ignored his pro se ineffective assistance of trial counsel claims." He also cites to State v. DiFrisco, 187 N.J. 156, 165-66 (2006), for the proposition that a court will lift the procedural bar when failure to file a second PCR within the time limit is due to excusable neglect.

Defendant further argues that "the filing delay for the second PCR petition was minimal, only seven months after the time limitation expired." He asserts that his "ineffective assistance of appellate PCR counsel did not materialize until the Appellate Division affirmed the first PCR denial, on October 8, 2019, which is the earliest date that [defendant] could learn that PCR appellate counsel performed ineffectively." Thus, he urges this court to find that the one-year filing limit for filing his second PCR is October 8, 2020. He alleges this "minimal" delay of seven months should not be held against him.

Defendant also posits that when the court is considering whether to relax the time bar of Rule 3:22-12, "[t]he court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the [defendant]'s claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Mitchell, 126 N.J. 565, 580 (1992). He argues that the second PCR court did not consider these factors, and that the delay in filing his petition "was caused largely by first PCR and appellate counsel's incompetence in failing to properly advance" his pro se claims.

Defendant next asserts that because the second PCR court, after finding defendant's petition was time-barred, went on to declare that the pro se claims "were either previously considered or totally lack merit," the court failed to adhere to Rule 1:7-4(a) by not providing an explanation by way of facts or law to support its conclusion.

Finally, defendant asserts that the second PCR court's reliance on State v. Jackson, 454 N.J. Super. 284 (App. Div. 2018), was "misplaced" and that his case is "readily distinguishable." He contends that "[u]nlike in Jackson, where all of the pro se claims were considered by the court, the [defendant] here was deprived of review of his ineffective assistance claims." Furthermore, he asserts

that the untimely PCR petition in Jackson was seven years late, whereas his petition was only seven months late.

The State counters that defendant concedes its second PCR application was untimely. It further argues defendant improperly relies on "cases that address the rules applicable to first PCRs and/or prior versions of the applicable Rules . . . and rejects as 'misplaced' on point precedent of this court." It argues that "[b]ecause defendant's second PCR focused entirely on allegations of ineffective assistance by PCR counsel and PCR appellate counsel, the only [rule] . . . that could apply to his PCR [petition] was . . . Rule 3:22-12(a)(2)(C) . . . ." Therefore, the State asserts defendant had to file his second PCR by June 29, 2019, but instead filed his second PCR petition roughly one year and eleven months later on June 9, 2021.

The State also asserts that even if we were to accept defendant's argument that the one-year clock under Rule 3:22-12(a)(2)(C) starts at the denial of his second PCR appeal, his second PCR petition would still be untimely as he filed his petition eight months after the one-year time bar. As such, the State contends that defendant's "failure to timely-file his second PCR bound the [second] PCR court's hand."

A-1732-22

The State argues that "defendant ignores that the procedural bars at issue [in Hannah] [was] not the time bar" and that the petition in Hannah was timely filed. It asserts that "[b]y ignoring this dispositive difference between Hannah and [t]his case, defendant likewise ignores the clarity of the [rules] that specifically disallow the enlargement of time for untimely second PCRs."

The State further contends that defendant's reliance on DiFrisco, 187 N.J. at 165-66, is misplaced, as "the version of R[ule] 3:22-12 being applied there" is a different version of the rule, which at the time "treated all PCRs—first, second, or any filed thereafter—the same for purposes of timely filing; all had to be filed within five years of conviction and all late filings were subject to the excusable neglect exception and/or relaxation under R[ule] 1:1-2." However, the State asserts that "[a]mendments to R[ules] 1:3-4(c) and 3:22-12 in 2009 and 2010 . . . remove excusable neglect and relaxation from application to second or subsequent PCRs," as the court recognized in Jackson. 454 N.J. Super. at 294-95.

B.

Rule 3:22-4(b) places strict limitations on second and subsequent petitions for PCR. Pursuant to Rule 3:22-4(b), a second or subsequent petition for PCR is barred unless:

16

(1) it is timely under [Rule] 3:22-12(a)(2); and

(2) it alleges on its face either:

> (A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or

> (B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

> (C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR].

Rule 3:22-12(a)(2), in turn, provides:

> [N]o second or subsequent petition shall be filed more than one year after the latest of:

>> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

17

(B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C) the date of the denial of the first or subsequent application for [PCR] where ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged.

The time bar imposed in these court rules may not be relaxed except as provided under Rule 3:22-12(a)(2). R. 3:22-12(b); Jackson, 454 N.J. Super. at 292-94. Rule 1:3-4(c) also specifically provides that "neither the parties nor the court" may enlarge the time specified for the filing of PCR petitions under Rule 3:22-12. Although time limitations are not completely absolute and may be waived to prevent fundamental injustice, this court must view the Rules in light of their dual purposes: "to ensure . . . the passage of time does not prejudice the State's retrial of a defendant" and "to respect the need for achieving finality." DiFrisco, 187 N.J. at 166-67 (quoting Mitchell, 126 N.J. at 576). We noted in Jackson:

> By mandating in Rule 3:22–12(a)(2) that the one-year time limit applied "[n]otwithstanding any other provision of this rule," the Supreme Court made clear that the late filing of a second or subsequent PCR

petition could not be excused in the same manner as the late filing of a first PCR petition.

[454 N.J. Super. at 293 (alteration in original).]

Defendant asserts that his case is similar to Hannah because his pro se claims raised in the first PCR have "evaded meaningful judicial review despite his continuous efforts to have those claims considered." However, Hannah did not discuss the strict time bar imposed under Rule 3:22-12(a)(2). Instead, Hannah dealt with procedural bars "generally barr[ing a defendant] from presenting a claim on PCR [petition] that could have been raised at trial or on direct appeal, R[ule] 3:22-4(a), or that has been previously litigated, R[ule] 3:22-5." 248 N.J. at 178 (quoting State v. Nash, 212 N.J. 518, 546 (2013)). The court stated that "those rules" do not require the court to ignore a fundamental unfairness. Ibid. (emphasis added). Furthermore, Hannah dealt with a PCR petition "based on newly discovered evidence," possibly "exculpatory evidence" and "critical evidence." Id. at 168, 155.

The Hannah Court found a fundamental injustice because "critical evidence was withheld from the jury that supported [Hannah's] third-party-guilt defense." Id. at 155. Hannah did not overrule Jackson but rather addressed a unique circumstance involving the defendant's "fourteen-year odyssey" through the PCR process with a complex procedural history to correct what the Court

19

viewed as fundamental injustice that denied the defendant a fair trial. Id. at 155, 190. That new evidence was crucial to the Court's decision to not allow such procedural bars to apply, because the new information "likely would have altered the outcome of the trial." Id. at 155.

Here, however, defendant is time barred under Rule 3:22-12(a)(2)(C), and such "time limitations shall not be relaxed." R. 3:22-12(b). Such "late filing of a second or subsequent PCR petition [cannot] be excused." Jackson, 454 N.J. Super. at 293. Furthermore, defendant does not posit that new evidence has been discovered. Defendant's claims are distinguishable from the facts and "tortuous" procedural history in Hannah. Id. at 175. In short, the facts here do not present that rare case requiring relief from the procedural limitations imposed on a second or subsequent PCR petitions under Rule 3:22-12.

Defendant also asserts that under DiFrisco, the court should lift the procedural bar when failure to file a timely second PCR petition is due to excusable neglect. 187 N.J. at 165-66. However, DiFrisco was decided prior to the amendments to Rule 1:3-4(c) in 2009, which now states that "[n]either the parties nor the court may . . . enlarge the time specified by . . . R[ule] 3:22-12." Moreover, the amendments to Rule 3:22-12 in 2010 no longer allow "excusable neglect" as an exception for second or subsequent PCR petitions. For these

20

reasons, <u>DiFrisco</u> does not apply here.  See <u>Jackson</u>, 454 N.J. Super at 293. The PCR court reasonably relied on <u>Jackson</u> in rejecting defendant's contentions that the amended rules can be interpreted with flexibility, under the facts of this case, to allow for the late PCR petition.[5]

The second PCR court did not substantively address defendant's claims after finding them time barred, but did note the ineffective assistance claims— for failing to challenge the defective complaint, failing to address the <u>Brady</u> violation, failing to properly investigate, and failing to challenge the grand jury proceeding—"were either previously considered or totally lack merit." Defendant asserts first PCR counsel failed to properly advance his pro se claims before the first PCR court, and PCR appellate counsel failed to raise the issues on appeal or request a remand for the trial court to consider the issues.  We briefly address these issues.

Defendant asserts PCR counsel and PCR appellate counsel failed to challenge the defective complaint.  Moreover, defendant argues PCR counsel

---

[5]  Defendant also asserts that, if we were to start the one-year clock under <u>Rule</u> 3:22-12(a)(2) from the time of the appellate court's affirmance of his first PCR petition denial, his untimeliness is "minimal" as his petition was filed only seven months past the deadline, at least with respect to PCR appellate counsel. However, defendant provides no controlling authority to support the proposition that a "minimal" delay is acceptable under the strict time bar set forth in <u>Rule</u> 3:22-12(b).

and PCR appellate counsel failed to challenge the grand jury proceedings. Both arguments suffer the same infirmity.

To satisfy the second <u>Strickland</u> prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." <u>Id.</u> at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Ibid.</u>

The challenges to the complaint and grand jury proceedings are moot following a jury trial and subsequent conviction. Generally, any defect in a grand jury proceeding affecting the decision to indict is cured or rendered moot once a jury convicts, because a jury verdict establishes that there was probable cause to indict. <u>United States v. Mechanik</u>, 475 U.S. 66, 70 (1986); <u>State v. Warmbrun</u>, 277 N.J. Super. 51, 60 (App. Div. 1994). Moreover, defendant's allegations are conclusory in nature and no more than bald assertions.

Defendant also argues that PCR appellate counsel was ineffective for failing to address the prosecutor's improper vouching during closing arguments. This issue was raised by the first PCR counsel, and the first PCR court correctly noted this issue was previously raised on direct appeal and that we rejected the argument. Because this issue was argued and decided on direct appeal, it is barred here under Rule 3:22-5.

To the extent we have not addressed any other arguments raised by defendant, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1732-22