# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2813-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

B.C.S.,

    Defendant-Appellant.

_____

Argued March 25, 2025 – Decided May 1, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-10-1403.

Kayla Rowe, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Steven M. Gilson, on the brief).

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (LaChia L. Bradshaw, Burlington County Prosecutor, attorney; Alexis R. Agre, of counsel and on the brief).

PER CURIAM

Defendant B.C.S.[1] appeals from an order denying his petition for post-conviction relief (PCR).  Based on our review of the record and applicable legal principles, we affirm.

I.

On June 7, 2013, the Division of Child Protection and Permanency (DCPP) investigated the home of B.H. and J.H. in Brown Mills.  B.H. was the mother and J.H. was the father of three children.  DCPP informed B.H. and J.H. that it was investigating allegations of sexual abuse of all of their children by defendant.  The three children subject to the investigation were Z.H., a nine-year-old boy, A.H., a seven-year-old girl, and E.H., a six-year-old girl.  Defendant was the foster brother of J.H. and had been entrusted to care for the children on multiple occasions, including overnight care.

On June 11, 2013, Detective Hageman of the Pemberton Township Police Department contacted B.H. who agreed to bring the children to the police station to be interviewed.  Detective Hageman interviewed A.H.,[2] while another detective in the department, Detective Hann interviewed Z.H. and E.H.  During

_____

[1]  We use initials to protect the identity of the minor victims and to preserve the confidentiality of these proceedings.  R. 1:38-3(d)(10).

[2]  A.H.'s out-of-court statement was excluded from trial because it was deemed too unreliable.

A-2813-23

the interviews, all three children described incidents of being sexually assaulted by defendant. After completing the interviews with the children, B.H. agreed to call defendant in order for the detectives to record the phone conversation between them. During the phone call, defendant initially denied that there was any sexual contact between him and the children. B.H. told defendant she must inform her husband, J.H., about the interactions and she promised to keep the information between the two of them if defendant were to tell the truth. B.H. also informed defendant that she had already contacted the police, but falsely stated his roommate had implicated him, and physical evidence existed corroborating the children's allegations.

Thereafter, defendant alternated between admitting and denying the allegations of sexual contact with the children. He eventually admitted to touching Z.H.'s genitals and engaging in anal penetration on one occasion; he admitted to touching A.H.'s clitoris while she was asleep; and admitted to touching E.H.'s vagina while she was bathing.

The next day, Detectives Hageman and Hann met defendant at his home in Browns Mills. Defendant agreed to go to the police station to be interviewed. The detectives provided defendant his Miranda[3] rights which he acknowledged

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

by signing and dating a "<u>Miranda</u> card." During the videotaped interview, defendant admitted to sexually assaulting all three children. Defendant admitted that he inserted his penis into Z.H.'s buttocks and stopped when Z.H. asked him. Defendant also stated he manually masturbated Z.H. Defendant admitted to "playing" with A.H.'s vagina and clitoris while she slept. Defendant denied any involvement with E.H. initially, but upon further questioning admitted his finger "slipped" and touched her vagina when bathing her.

When defendant requested an opportunity to speak with an attorney, the detectives terminated the interview, left the room but continued to record the interview room. While alone in the interview room, defendant could be heard talking to himself, stating, "I just need some counseling. I need some kind of help, and I need to start today. That's what I need to do. . . . I'm only saying these things because, yea, [B.H.] told me to." Defendant then asked the detectives to come back into the room, and after being re-advised of his <u>Miranda</u> rights, stated that he only confessed because B.H. offered him $5,000 to say that he assaulted the children.

In October 2013, defendant was indicted on five counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), two counts of second-degree

4

sexual assault, N.J.S.A. 2C:14-2(b), and six counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).

Following the indictment, defendant filed multiple pretrial motions, including moving to exclude the victims' testimony and statements as unreliable. The court granted one of the motions but denied the remainder. Prior to trial, the State voluntarily dismissed one count of sexual assault and one count of endangering the welfare of a child. In June 2015, a jury found defendant guilty on three counts of first-degree aggravated sexual assault, two counts of the lesser-included offense of second-degree sexual assault and three counts of second-degree endangering the welfare of a child.

The court sentenced defendant to consecutive sixteen-year prison terms on two of the first-degree aggravated sexual assault counts, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court sentenced defendant to a concurrent sixteen-year prison term on the third first-degree aggravated sexual assault count subject to NERA. The court imposed concurrent prison terms on the remaining counts: seven years subject to NERA on each of the second-degree sexual assault convictions and seven years on each of the three endangering the welfare of a child convictions. The court ordered defendant to comply with the registration requirements of Megan's Law, N.J.S.A. 2C:7-2,

5

imposed parole supervision for life, N.J.S.A. 2C:43-6.4, and imposed fines, penalties and assessments.

Defendant appealed the convictions, and we affirmed. State v. B.C.S., No. A-3043-15 (App. Div. July 3, 2019) (slip op. at 3). The Supreme Court initially granted certification, but later dismissed it as improvidently granted. State v. B.C.S., 240 N.J. 258 (2019). Thereafter, defendant filed his first petition for PCR on January 31, 2021. The petition was denied by the trial court. By letter of February 10, 2021 the court found that a PCR petition "may not be filed 5 years after rendition of the judgment or sentence sought to be attacked. Your judgment was rendered October 9, 2015, and your motion was filed on December 24, 2020."

Defendant's counsel subsequently filed a motion to reinstate the petition on May 19, 2021, which was granted on June 2, 2021. On February 8, 2022, the petition was dismissed for lack of prosecution. On May 21, 2023, counsel refiled the petition without first filing a motion to reinstate.

On October 16, 2023, the court heard argument regarding, (1) whether the petition was properly before the court, as no motion to reinstate the petition had been filed and, (2) whether the PCR petition was timely filed and, if so, whether defendant showed a prima facie case of ineffective assistance of counsel

6

requiring a hearing. On February 15, 2024, the court issued an opinion and order denying the petition without an evidentiary hearing on both procedural and substantive grounds, finding defendant's petition was time-barred and his claims of ineffective assistance of counsel had no merit.

Defendant appealed raising the following points:

POINT I

DEFENDANT'S PETITION SHOULD NOT HAVE BEEN PROCEDURALLY BARRED.

POINT II

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO CONDUCT AN ADEQUATE PRETRIAL INVESTIGATION BY HAVING DEFENDANT EVALUATED BY AN EXPERT TO DETERMINE IF HE WAS MENTALLY COMPETENT OR SUFFERED FROM A DIMINISHED CAPACITY.

II.

Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). A defendant is not automatically entitled to an evidentiary hearing. State v. Porter, 216 N.J. 343, 355 (2013). Rule 3:22-

7

10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if they establish a prima facie case in support of PCR, material issues of disputed fact cannot be resolved by reference to the existing record, and an evidentiary hearing is necessary to resolve the claims for relief. Id. at 354 (quoting R. 3:22-10(b)). The PCR court should grant an evidentiary hearing "if a defendant has presented a prima facie claim in support of [PCR]." State v. Preciose, 129 N.J. 451, 462 (1992).

To establish a prima facie claim of ineffective assistance of counsel, a defendant is obligated to show (1) that counsel's performance was deficient, and (2) the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 48-50 (1987). Under the first prong, defendants must demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687. Defendants can establish deficient performance of counsel by showing "counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Gaitan, 209 N.J. 339, 350 (2012) (quoting State v. Castagna, 187 N.J. 293, 314 (2006)) (internal quotations and citation omitted). "Mere dissatisfaction with a 'counsel's exercise of judgment' is

insufficient to warrant overturning a conviction." State v. Nash, 212 N.J. 518, 542 (2013) (quoting State v. Echols, 199 N.J. 344, 358 (2009)). The "petitioner must do more than make bald assertions," but instead "allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Under the second prong, defendant must show "counsel's errors were so serious as to deprive [] defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

## A.

We begin with the PCR court's determination that defendant's petition was filed untimely. Defendant was sentenced on October 9, 2015, and his first PCR petition was filed on January 31, 2021. The petition was initially dismissed as time-barred but was later reinstated. However, on February 8, 2022, the petition was dismissed again without prejudice for lack of prosecution. Although defendant filed another PCR petition and the court scheduled oral argument and set a briefing schedule, it ultimately determined defendant failed to file a motion to reinstate and denied the petition finding it was not filed timely.

Pursuant to Rule 3:22-12:

> [N]o petition shall be filed more than [five] years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:

9

> (A) it alleges facts showing that the delay beyond said time was due to defendant's <u>excusable neglect</u> <u>and</u> that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a <u>fundamental injustice</u>.
>
> [<u>R.</u> 3:22-12(a)(1)(A) (emphasis added).]

The five-year time bar on initial petitions may be relaxed only under the specified circumstances set forth in <u>Rule</u> 3:22-12(a)(1)(A). In assessing whether excusable neglect justifies relaxation of the time bar, we "consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." <u>State v. Norman</u>, 405 N.J. Super. 149, 159 (App. Div. 2009) (quoting <u>State v. Afanador</u>, 151 N.J. 41, 52 (1997)). More than "a plausible explanation for [defendant's] failure to file a timely PCR petition" is required. <u>Ibid.</u> Our Supreme Court has described the required showing as one of "compelling, extenuating circumstances," <u>State v. Milne</u>, 178 N.J. 486, 492 (2004) (quoting <u>Afanador</u>, 151 N.J. at 52), or alternatively, "exceptional circumstances . . . ." <u>State v. Murray</u>, 162 N.J. 240, 246 (2000) (citing <u>State v. Mitchell</u>, 126 N.J. 565, 580 (1992)).

A-2813-23

"A fundamental injustice occurs 'when the judicial system has denied a defendant with fair proceedings leading to a just outcome or when inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice.'" State v. Hannah, 248 N.J. 148, 179 (2021) (internal quotation marks omitted) (quoting Nash, 212 N.J. at 546). "To demonstrate a fundamental injustice, a defendant must show 'that an error or violation played a role in the determination of guilt.'" Ibid. (internal quotation marks omitted) (quoting Nash, 212 N.J. at 547).

We agree with the PCR court's determination that defendant failed to show through competent evidence that the delay was due to excusable neglect. Further, we are satisfied that enforcement of the time bar will not result in a fundamental injustice.

Defendant contends he showed excusable neglect because he was not made aware of his PCR rights. We conclude this argument lacks merit because, as the PCR court pointed out, defendant was made aware of his PCR rights during his sentencing on October 9, 2015. Further, we are unpersuaded by defendant's argument that because the direct appeal was pending before us it delayed his ability to file for PCR. It has long been established that "there is no provision for tolling in R[ule] 3:22-12 by reason of a direct appeal from the

conviction being available or actually having been filed." State v. Dillard, 208 N.J. Super. 722, 727 (App. Div. 1986). Accordingly, we find no reason to disagree with the PCR court's determination that defendant failed to show excusable neglect, and, therefore, the PCR court correctly found his petition was filed untimely.

In addition, when considering the PCR petition on the merits, we concur with the PCR court that defendant failed to demonstrate ineffective assistance of counsel. Defendant asserts counsel was ineffective by not conducting a pretrial investigation to determine whether he was mentally competent or suffered from a diminished capacity. Defendant argues the failure to have him evaluated stripped him of having a "complete defense."

We conclude, as the PCR court did, that defendant failed to show any credible evidence, besides his own statements, that he was suffering from a diminished capacity or mental defects to support an evaluation. Defendant's bald assertions that he had diminished capacity are insufficient. Defendant provided no medical documentation, expert opinion, certification or any credible evidence establishing he suffered from any mental disease or defect that could negate the requisite mental state for the offenses charged. See Cummings, 321 N.J. Super. at 170 (explaining that facts supporting a PCR petition must be

"supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification").

Moreover, defendant's trial strategy focused on contesting the factual basis of the charges, rather than asserting he lacked the mental capacity to form the requisite criminal intent. We conclude a diminished capacity defense is fundamentally inconsistent with that position. Here, defendant fails to explain his counsel's deficiency in pursuing one defense over another. We conclude there is no merit to this argument because it is well settled that "purely speculative deficiencies in representation are insufficient to justify reversal." Fritz, 105 N.J. at 64; see also State v. Arthur, 184 N.J. 307, 327-28 (2005).

We further conclude because defendant failed to establish a prima facie case of ineffective assistance of counsel, the PCR court exercised its discretion in denying an evidentiary hearing. See R. 3:22-10(b) (stating a defendant is only entitled to an evidentiary hearing "upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact . . . , and a determination that an evidentiary hearing is necessary to resolve the claims for relief"). We conclude the PCR court did not abuse its discretion under these circumstances.

To the extent we have not specifically addressed any of defendant's remaining legal arguments we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2813-23